## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

ESTATE OF BERNARD J. SHERLIP, on
behalf of itself and all others similarly
situated,

               Plaintiff,

      v.

MORGAN STANLEY,
MORGAN STANLEY & CO. LLC, and
MORGAN STANLEY SMITH
BARNEY LLC,

               Defendants.

Case No. _____

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

This case concerns a simple ruse: in violation of its fiduciary duties and contractual obligations and a regulatory mandate to act only in the "best interests" of its customers, Morgan Stanley (and its affiliates) fails to secure for its brokerage and advisory customers reasonable interest rates on its customers' cash balances. Instead, Morgan Stanley implements a scheme whereby those customers' cash balances are used by Morgan Stanley to generate massive profits for itself based primarily on prevailing market rates. During the rising interest rate environment from March 2022 through the present, the spread between what Morgan Stanley secures for its customers and what it makes in the market, known as "net interest income," has grown exponentially—over $8 billion in 2023 alone. While that growth was and continues to be extremely lucrative for Morgan Stanley and its affiliates, Morgan Stanley's scheme was and continues to be extremely detrimental to its customers—in flagrant violation of its duties to its customers.

1

Plaintiff, on behalf of itself and the proposed Class defined herein, seeks redress for the harm caused by Morgan Stanley's conduct. In support of its Complaint, Plaintiff alleges the following:

## PARTIES

1.     Plaintiff, the Estate of Bernard J. Sherlip, is a citizen of Connecticut. Bernard Sherlip, who was a physician and resident of Fairfield, Connecticut, passed away in March 2023. His Estate is administered by his daughters, Susanne Sherlip Mehlmann and Joy Sabrina Hultman, co-executors appointed by the Probate Court of Fairfield County, Connecticut, on May 4, 2023. The co-executors of the Estate are not compensated for their work, and they are not professional estate managers.

2.     Morgan Stanley is a corporation incorporated in Delaware with its principal place of business in New York, New York. Morgan Stanley provides financial consulting, wealth management, and advisory services to Plaintiff and other members of the proposed Classes.

3.     Morgan Stanley & Co. LLC is a registered broker-dealer with the Securities and Exchange Commission ("SEC") formed in the State of Delaware; it provides wealth management services to Morgan Stanley customers. Morgan Stanley & Co. LLC maintains its principal place of business in New York, New York.

4.     Morgan Stanley Smith Barney LLC is a registered broker-dealer with the SEC formed in the State of Delaware; it provides wealth management services to Morgan Stanley customers. MSSB is also a registered investment adviser with the SEC, and its relationship with its customers is subject to the fiduciary, contractual, and other obligations imposed on investment advisers. Morgan Stanley Smith Barney LLC maintains its principal place of business in New York, New York.

5.     As used herein, the term "Morgan Stanley" collectively refers to Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley Smith Barney LLC.

## RELATED ENTITIES NOT NAMED AS PARTIES

6.     Although not named as parties to this case, certain affiliated entities are discussed herein, including Morgan Stanley Bank and Morgan Stanley Private Bank. Both of these entities are wholly owned subsidiaries of Morgan Stanley and, because they are affiliated banks, they participated in and reaped the benefits of the wrongful conduct alleged herein.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d).

8.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this district and have their principal places of business here.

9.     Venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10.     Morgan Stanley is a "global financial services firm that . . . manages and distributes capital for governments, institutions and individuals."[1]

11.     A significant source of income for Morgan Stanley is net interest income, meaning the difference between the amount of interest that Morgan Stanley pays or secures for its brokerage and advisory customers and what Morgan Stanley and its affiliates earn on those cash balances.

12.     As described more fully below, Morgan Stanley makes more money when its customers' funds are invested in the Morgan Stanley cash sweep program (discussed below) rather than in similar cash options and equivalents.  Moreover, when customers are in the Morgan Stanley

---

[1]     Morgan Stanley Annual Report Form 10-K (December 2023) at p. 5.

cash sweep program, Morgan Stanley (and its affiliates) pays and/or secures rates of interest on the customer's cash balances that are neither reasonable nor in compliance with its legal duties.

### Morgan Stanley's Bank Deposit Program

13. Morgan Stanley's cash sweep program for its brokerage and advisory customers is known as its "Bank Deposit Program" ("BDP").

14. The BDP is the "default sweep vehicle for end of day cash held in brokerage and/or investment advisory accounts . . . ." *See* Morgan Stanley Client Relationship Summary (January 2, 2024) at p. 2.[2]

15. By default, Morgan Stanley customer cash funds are initially deposited in Morgan Stanley Bank or Morgan Stanley Private Bank.

16. Before March 2023, Morgan Stanley only swept customer cash balances to Morgan Stanley Bank or Morgan Stanley Private Bank.

17. After March 2023, Morgan Stanley began sweeping customer cash funds to a non-affiliated "Program Bank," but only if a customer's cash funds exceed the FDIC limit in the two Morgan Stanley banks.

18. Citibank N.A. is the only Program Bank listed by Morgan Stanley as of April 2024.[3]

19. If a customer's cash exceeds FDIC limits at all of the available banks—i.e., Morgan Stanley Bank, Morgan Stanley Private Bank, and Citibank N.A.—then the excess amount is transferred to the Morgan Stanley money market fund (symbol MGPXX) if eligible.

---

[2] Available at http://www.morganstanleyclientserv.com/publiccontent/msoc/pdf/Client RelationshipSummary.pdf. (accessed April 23, 2024).

[3] Bank Deposit Program—Program Banks (as of April 4, 2024), available at https://www.morganstanley.com/wealth-general/programbanks (accessed April 24, 2024).

20.     Collectively, the affiliated and non-affiliated banks are referred to as "Sweep Banks."

21.     Several types of Morgan Stanley accounts will sweep only to banks affiliated with Morgan Stanley (i.e., not Citibank). This includes any jointly-held accounts, investment advisory retirement accounts, and accounts with varying interest rates.

22.     Morgan Stanley fails to pay or secure for its customers a reasonable rate of interest on the cash balances in its BDP.

23.     At no time does Morgan Stanley's web-based disclosures identify the applicable interest rates, nor does it disclose how those rates are calculated or what they are tied to. It does, however, reference interest rates available on a different website; these rates are the applicable interest rates on Deposit Accounts.

24.     As of March 5, 2024, those rates were:[4]

| From | To | Annual Percentage Yield |
|------|-----|--------------------------|
| $10 million | and above | 0.50% |
| $5 million | $9,999,999 | 0.50% |
| $2 million | $4,999,999 | 0.30% |
| $1 million | $1,999,999 | 0.15% |
| $500,000 | $999,999 | 0.05% |
| $250,000 | $499,999 | 0.01% |
| $100,000 | $249,999 | 0.01% |
| $0 | $99,999 | 0.01% |

25.     The rates paid by Morgan Stanley to its customers pursuant to the BDP violate Morgan Stanley's duties to its customers because these rates are not reasonable, which constitutes

---

[4]     Bank Deposit Program Rate Monitor (March 5, 2024), available at https://www.morgan stanley.com/wealth-general/ratemonitor (accessed 4/23/24).

a breach of Morgan Stanley's fiduciary and contractual duties to its customers and a violation of

Regulation Best Interest, 17 CFR § 240.15l-1 (2019) (hereinafter "Reg. BI").

### Morgan Stanley's Duties to Its Customers

26.     Morgan Stanley owes varying duties to each customer based on the type of

relationship it has with the customer.  For example:

> a.  for all retail retirement accounts, including traditional, Roth, and Simple Individual
>
> Retirement Accounts ("IRAs"), Morgan Stanley was contractually obligated to pay
>
> its customers a "reasonable rate of interest" on the customers' cash balances;
>
> b.  for all retail advisory accounts, Morgan Stanley was required to act as a fiduciary
>
> to its customers, requiring it to only act for the benefit of its customers and not its
>
> own self-interest;
>
> c.  for all retail customer accounts, regardless of whether the account was qualified or
>
> not, advisory or retail brokerage, Morgan Stanley was required to always act in the
>
> "best interests" of its customers.

### *Morgan Stanley's Fiduciary Duties*

27.     Because it provides financial advisory and other services to its customers, Morgan

Stanley must adhere to certain standards of conduct vis-a-vis its customers.

28.     For example, when Morgan Stanley is acting as an Investment Adviser ("IA") for

actively managed funds, it owes its customer a fiduciary duty. *See* Securities and Exchange

Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg.

134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.")

(hereinafter "Fiduciary Interpretation").

29.     "The Advisers Act establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the Advisers Act." *Id.*

30.     Under this federal duty, Morgan Stanley "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id.*

31.     If there is a conflict between its interests and its client's interests, then Morgan Stanley is also required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id.*

32.     Morgan Stanley "must make full and fair disclosure to its clients of all material facts relating to the advisory relationship." *Id.*

### *Morgan Stanley's Duties Under Regulation Best Interest*

33.     Even where Morgan Stanley is not acting as an Investment Adviser and playing a more passive role, it still must act in its customers' best interests under Reg. BI.

34.     While the Investment Adviser obligations apply to all investment advisory customers, Reg. BI applies only to retail investors, defined as "a natural person, or the legal representative of such person who (i) [r]eceives a recommendation of any securities transaction or investment strategy" and "(ii) [u]ses the recommendation primarily for personal, family, or household purposes." 17 C.F.R. § 240.15l-1(b)(1).

35.     Although there are technical differences between Reg. BI and an Investment Adviser's fiduciary obligations, "they generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[5]

36.     Reg. BI was drafted "to draw on key principles underlying fiduciary obligations, including those that apply to investment advisers under the Advisers Act, while providing specific requirements to address certain aspects of the relationships between broker-dealers and their retail customers." 84 Fed. Reg. 33318, 33320.

37.     Under Reg. BI, regardless of whether an investor chooses a broker-dealer or an investment adviser (or both), the investor "will be entitled to a recommendation . . . or advice . . . that is in the best interest of the retail investors and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

38.     Reg. BI consists of a "General Obligation," which states, "When making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320. Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

39.     These latter duties require disclosure of "all material facts relating to conflicts of interest . . . that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

---

[5]     *See* SEC Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations, available at www.sec.gov/tm/standards-conduct-broker-dealers-and-investment-advisers (accessed 4/23/24).

40.     Part of a broker-dealer's obligation under Reg. BI is to "consider reasonable alternatives, if any, offered by the broker-dealer in determining whether it has a reasonable basis for making the recommendation." 84 Fed. Reg. 33318, 33321.

41.     One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

42.     Thus, under Reg. BI, Morgan Stanley was and is obligated to elevate its customers' interests above its own, to avoid conflicts with customers' interests, and disclose material facts concerning any conflicts that may exist.

### Morgan Stanley's Duty to Secure Reasonable Interest Rates

43.     For customer cash balances maintained in retirement accounts (regardless of whether the accounts are advisory or brokerage in nature), Morgan Stanley may utilize those cash balances for investments or loans but only if it pays the customer a "reasonable rate" of interest on those cash balances.

44.     For example, section 4975 of the Internal Revenue Code concerns "prohibited transactions" and applies when a plan sponsor for an IRA engages in transactions with a "disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account." 26 U.S.C. § 4975.

45.     A "disqualified person" includes companies or individuals "providing services to the plan." 26 U.S.C. § 4975(e)(2)(B). This would include non-Morgan Stanley entities, such as banks that receive deposits swept from Morgan Stanley client accounts; in this case, that entity is Citibank N.A.

46.     Regarding these "prohibited transactions," the IRS code provides several safe harbors, one of which is "the investment of all or part of a plan's assets in deposits which bear a reasonable interest rate in a bank or similar financial institution." 26 U.S.C. § 4975(d)(4).

47.     Thus, while Morgan Stanley is allowed to invest all or part of a customer's cash balances maintained in retirement accounts, those cash balances must "bear a reasonable interest rate." 29 U.S.C. § 4975(d)(4); 26 CFR § 54.4975-6. The objective of this provision is to ensure that related party transactions—i.e., transactions between a plan sponsor (Morgan Stanley) and a service provider (Citibank)—concerning retirement accounts are priced at fair market rates.

48.     Treasury regulations extend this same obligation to situations when Morgan Stanley "invests plan assets in deposits in itself or its affiliates." 26 CFR § 54.5975-6(b)(3)(i). When this occurs, the client's authorization "must name" the institution and "must state that [the bank] may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)." *Id*.

49.     Similarly, and like the IRS Code, ERISA also exempts from prohibition various interested party transactions that "bear a reasonable rate of interest." 29 U.S.C. § 1108(b)(1)(D).

50.     Morgan Stanley's customer contracts concerning its IRAs incorporate these government-mandated "reasonable rate" benchmarks.

51.     For example, as part of Morgan Stanley's Individual Retirement Plan (sponsored by Morgan Stanley Smith Barney LLC), the customer authorizes Morgan Stanley to deposit or invest cash balances in "deposit accounts with Morgan Stanley Bank, N.A. and/or any other banking affiliate of [MSSB] that bear a reasonable rate of interest." Morgan Stanley Individual Retirement Plan (Effective as of October 1, 2012) at ¶ 3.3(a). In another section, the same agreement also authorizes Morgan Stanley to invest the client's assets "in deposits of an affiliate

or affiliates which bear a reasonable rate of interest." *Id.* at ¶ 6.2(g).

52.     Morgan Stanley's Roth IRA agreement likewise requires the deposit of client funds into accounts that earn a "reasonable rate" of interest. Morgan Stanley Roth IRA (Effective as of October 1, 2012) at ¶¶ 3.3(a), 6.2(g).

53.     Morgan Stanley's SIMPLE IRA Plan agreement also requires the deposit of client funds into accounts that earn a "reasonable rate" of interest. Morgan Stanley SIMPLE IRA Plan (Effective as of October 1, 2012) at ¶¶ 3.3(a), 6.2(g).

54.     In sum, under the common law fiduciary standard, Reg. BI, and Morgan Stanley's contracts incorporating the federal statutory requirements, Morgan Stanley has a duty to act in the best interests of its customers and to secure reasonable interest rates for its customers' cash balances through a reasonable cash sweep program or reasonable cash equivalents—such as government money market funds available to Morgan Stanley customers.

### Morgan Stanley Breaches Its Duty and Profits Thereby

55.     Morgan Stanley breaches its duty to secure reasonable interest rates for its customers' deposits.

56.     The term "reasonable" is not defined in Morgan Stanley's contracts, but according to the term's dictionary definition, it is synonymous with "fair" and "proper."[6]

57.     IRS regulations define an "arm's-length interest rate" as:

> a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances.

26 CFR § 1.482-2(a)(2).

---

[6]     *See* Reasonable, Black's Law Dictionary (7th ed.).

58.    In 2003, the Department of Labor issued an exemption to certain transactions and, in granting the exemption, gave the following definition of a "reasonable" rate of interest:

> A "reasonable" rate of interest means a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated.

68 Fed. Reg. 34646, at 34648 (June 10, 2003).

### *Sweep Account Rates Paid by Other Institutions*

59.    The rates offered by Morgan Stanley through its Bank Deposit Program (BDP)—essentially Morgan Stanley's account sweep program—are significantly lower than sweep programs at other brokerage and advisory firms. For example, the following chart compares Morgan Stanley's BDP sweep rates with those of two comparable programs:

| Cash Balance | Morgan Stanley Bank Deposit Program Rate | Vanguard Sweep Rate[7] | Fidelity Sweep Rate[8] |
|---|---|---|---|
| Less than $250,000 | 0.01% | 4.7% | 2.69% |
| Between $250,000 and $499,999 | 0.01% | 4.7% | 2.69% |
| Between $500,000 and $999,999 | 0.05% | 4.7% | 2.69% |
| Between $1 million and $1,999,999 | 0.15% | 4.7% | 2.69% |

---

[7]    *See* Vanguard Cash Plus Account, interest rates available at https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account.   (accessed April 23, 2024).

[8]    *See* Fidelity Cash Management Account Deposit Sweep Program, interest rates as of March 6, 2024, available at www.digital.fidelity.com/prgw/digital/fdic-interest-rate/fcma (accessed April 23, 2024).

| Between $2 million and $4,999,999 | 0.30% | 2.00% | 2.69% |
|---|---|---|---|
| $5 million and above | 0.50% | 2.00% | 2.69% |

60.    Thus, other brokerage and advisory financial institutions that use sweep programs pay or secure significantly higher rates than Morgan Stanley.

**Money Market Fund Rates**

61.    Money market fund rates also provide a benchmark for determining what does or does not constitute a "reasonable rate." As described above, Morgan Stanley sweeps its customer cash into the Morgan Stanley money market fund after the maximum cash levels are reached at Morgan Stanley's sweep banks.

62.    The Morgan Stanley money market fund for Morgan Stanley brokerage and advisory customers, as of March 18, 2024, pays 4.83%. Other brokerage and advisory firms offer comparable money market funds for customers' cash balances paying similar rates of interest.

63.    The unreasonableness of the rates Morgan Stanley secures for its customers' cash balances is clearly evidenced when considering the interest Morgan Stanley pays its brokers and advisors for the customer cash swept into its BDP.

64.    For example, as noted above, for customer cash balances that are less than $500,000, Morgan Stanley secures an interest rate of 0.01%, or one basis point. Morgan Stanley at the same time pays its brokers 0.15%, or fifteen basis points, for that same customer cash balance. In other words, the broker makes fifteen times more than the customer on that customer's cash balance.

65.    Unlike its brokers, Morgan Stanley does not pay its investment advisors directly for customer cash balances in the Morgan Stanley BDP. Instead, Morgan Stanley and its advisors

charge a management fee on the cash balances. A typical annual advisory fee is approximately one percent (1%) or 100 basis points. In this scenario, the investment advisor makes 100 times the amount of interest on the customer's cash balances. Morgan Stanley has devised a scheme in which Morgan Stanley, its affiliated banks and its advisors make significant profits on advisory customer cash balances whereas the advisory customer, to whom a fiduciary duty is owed, *literally loses money on his cash balances*.

### Violation of Duties

66.     Morgan Stanley breaches its fiduciary duties and its contracts with its customers and violates Reg. BI by failing to pay or secure reasonable rates for customer cash balances.

67.     Morgan Stanley breaches its fiduciary duties and its contracts with its customers and violates Reg. BI by (1) failing to make adequate disclosures to its customers; (2) failing to elevate its customers' interests above its own; (3) failing to avoid or—at the very least disclose—its conflicts of interest with its customers; (4) failing to disclose to customers other viable options to customers that may benefit them; and (5) failing to demonstrate loyalty to its customers.

### Unjust Enrichment of Morgan Stanley

68.     Morgan Stanley's conduct unjustly enriches Morgan Stanley at the expense of its customers.

69.     In 2023, Morgan Stanley's net interest revenues rose 9% over the prior year "primarily due to the net effect of higher interest rates, partially offset by changes in deposit mix."[9]

70.     Expressed as a number, Morgan Stanley's 2023 net interest revenues were over $8 billion.[10]

---

[9]     *Id.* at p. 40.

[10]    *Id.*

71.     Typically, Morgan Stanley earns interest revenue on non-trading assets that it holds for its customers; this includes cash deposits and other capital that is not deployed for trading purposes.

72.     Morgan Stanley pays a certain rate to its customers that have deposited cash with the company, and then uses that cash to earn greater interest in other investments. The difference between what Morgan Stanley earns on the deposits and what it pays its customers is the company's net interest income.

73.     Much of Morgan Stanley's net interest income is generated by its Wealth Management business—a business unit that provides investment-related services for customer funds and serves as a broker-dealer for Morgan Stanley customers.

74.     Interest rates present a risk for Morgan Stanley's net interest income. Indeed, Morgan Stanley says that its Wealth Management business "reflects a substantial portion of our non-trading interest rate risk."[11]

75.     Fluctuating interest rates present a major revenue risk for Morgan Stanley. According to the company's own analysis, a change in interest rates may cause significant change in the company's net interest income:[12]

### Wealth Management Net Interest Income Sensitivity Analysis

| $ in millions | At December 31, 2023 | At December 31, 2022 |
|---|---|---|
| Basis point change | | |
| +100 | $      585 | $      643 |
| -100 | (609) | (745) |

---

[11]     *Id.* at p. 67.

[12]     Morgan Stanley Annual Report Form 10-K (December 2023) at p. 67.

76.     Changes in interest rates also mean that Morgan Stanley's customers may decrease their cash deposits. According to Morgan Stanley, "[t]he level of interest rates may impact the amount of deposits held at the Firm, given competition for deposits from other institutions and alternative cash-equivalent products available to depositors."[13]

77.     Thus, Morgan Stanley has a significant financial interest in (1) not paying depositors a reasonable interest rate and keeping as much of the "spread" as it can, and simultaneously (2) not disclosing to its customers the unreasonable interest rates paid by the company (as well as the company's inherent conflict of interests), lest the customers pursue accounts with more lucrative rates at other institutions.

### Plaintiff's Experience

78.     Bernard Sherlip, M.D. practiced medicine in Connecticut for over fifty years; he passed away in March 2023.

79.     After Dr. Sherlip passed away, an estate was opened and letters testamentary were issued to his daughters, Susanne S. Mehlman and Joy S. Hultman, to serve as co-executors of the estate.

80.     Dr. Sherlip maintained multiple accounts at Morgan Stanley from November 2012 to August 2022, including retirement accounts, retail investor accounts, and advisory accounts.

81.     For one of Dr. Sherlip's personal accounts (ending in 656-056) and one of his IRAs (ending in 819-056), Morgan Stanley was designated as an Investment Advisor, meaning the company owed the highest fiduciary duty for those funds.

82.     For Dr. Sherlip's other accounts, Morgan Stanley was required to comply with Reg. BI.

---

[13]     *Id.*

16

83.    In all the various accounts maintained by Dr. Sherlip with Morgan Stanley, Dr. Sherlip's cash balances were swept into Morgan Stanley's cash sweep program.

84.    As a result of Morgan Stanley's conduct, Dr. Sherlip and his Estate have been damaged, and Morgan Stanley has been unjustly enriched.

## CLASS ACTION ALLEGATIONS

85.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

86.    Plaintiff brings this class action and seeks certification of the claims on behalf of the following Class:

> **Retail customers of Morgan Stanley who had cash deposits or balances in Morgan Stanley's Bank Deposit Program.**

87.    Plaintiff also brings this class action and seeks certification of certain claims on behalf of the following Sub-Class (the "IRA Subclass"):

> **Retail customers of Morgan Stanley who had cash deposits or balances in Morgan Stanley's Individual Retirement Plan, Roth IRA, or SIMPLE IRA.**

88.    Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

89.    Excluded from the Class are governmental entities, institutional and other non-retail investors; Morgan Stanley and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiff and the proposed Classes, including other attorneys and staff at each respective firm.

90.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

**Numerosity**
**Rule 23(a)(1).**

91.     Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. However, Morgan Stanley's wealth management services provides financial planning and advisory services to over 6.1 million client accounts through the work of over 16,000 financial advisors.[14] Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

**Existence and Predominance of Common Questions of Law and Fact**
**Rule 23(a)(2), 23(b)(3)**

92.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

   a.   whether Morgan Stanley's interest rates are "reasonable";

   b.   the existence of Morgan Stanley's fiduciary duties to the Class, and whether Morgan Stanley violated those duties;

   c.   the duties imposed on Morgan Stanley by Reg. BI, and whether Morgan Stanley violated those duties;

   d.   the duties imposed on Morgan Stanley related to its IRA programs offered to retail customers (including Morgan Stanley's contractually-agreed-to duties), and whether Morgan Stanley violated those duties;

---

[14]     www.morganstanley.com/content/dam/msdotcom/en/wealth-general/nasdaq-private-market/pdf/MorganStanleyWealthManagement_Overview.pdf (accessed 4/23/24).

e.  whether Morgan Stanley breached the contractual terms of its IRA programs;

f.  whether Morgan Stanley was unjustly enriched by its wrongful conduct;

g.  whether this case may be maintained as a class action under Fed. R. Civ. P. 23;

h.  whether and to what extent Class members are entitled to damages and other monetary relief; and

i.  whether and to what extent Class members are entitled to attorneys' fees and costs.

**Typicality**
**Rule 23(a)(3)**

93.  Plaintiff's claims are typical of the claims of the Class because it was a retail account holder with Morgan Stanley that was paid an unreasonable rate by the company. Thus, Plaintiff's claims are typical of the claims of the members of the Class as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the members of each.

**Adequacy of Representation**
**Rule 23(a)(4)**

94.  Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

**Superiority**
**Rule 23(b)(3)**

95.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible

for the Class members, on an individual basis, to obtain effective redress for the wrongs done them.

96.    Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

97.    Superiority is particularly satisfied in a circumstance such as this where the law of a single state will apply. Under the uniform contract terms with Morgan Stanley, the law of New York will apply to each Class member's claims, allowing the Court to adjudicate the claims of all Class members under a single state analysis.

98.    Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

   a.  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

   b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class

members as a whole.

## FIRST CLAIM FOR RELIEF
### Breach of Contract—Express Provisions
### Brought on behalf of the IRA Subclass against All Defendants

99.    Plaintiff, on behalf of itself and the IRA Subclass, hereby re-alleges the paragraphs above as if fully set forth herein.

100.    Morgan Stanley's governing documents related to its IRAs constitute a binding agreement between Morgan Stanley and its IRA accountholders.

101.    The governing documents guarantee that Morgan Stanley will pay a "reasonable rate of interest" on cash deposits or balances maintained in the IRAs.

102.    As set forth herein, Morgan Stanley failed to pay a "reasonable rate of interest" on those deposits; therefore, Morgan Stanley breached the contracts.

103.    Morgan Stanley's conduct damaged Plaintiff and the IRA Subclass.

104.    Plaintiff, individually and on behalf of the IRA Subclass, seeks all damages permitted by law.

## SECOND CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### Brought on behalf of the Class against All Defendants

105.    Plaintiff, on behalf of itself and the Class, hereby re-alleges the paragraphs above as if fully set forth herein.

106.    Under the Investment Advisers Act and at common law, Morgan Stanley owed fiduciary duties toward the Class members who maintained managed accounts within the purview of the Investment Advisers Act.

107.    Under Reg. BI, Morgan Stanley owed duties toward the Class members who maintained non-managed accounts (including IRAs), and those duties are tantamount to fiduciary

obligations for the purposes of this litigation.

108. These duties include, but are not limited to:

    a.  a duty of loyalty;

    b.  a duty to act in the best interests of its customers;

    c.  a duty not to place Morgan Stanley's interests above those of its customers;

    d.  a duty to avoid conflicts of interest; and

    e.  a duty to disclose any conflicts of interest.

109. Morgan Stanley violated each of the foregoing duties when it (1) failed to pay the Class a reasonable rate of interest; (2) failed to act in the customers' best interests by not providing a reasonable default for cash balances that paid its customers a fair and reasonable rate of interest on cash balances; (3) placed its own interests in realizing financial gain from net interest income ahead of the Class's interest in obtaining a reasonable rate of interest; (4) maintained and failed to disclose its conflict of interest in securing increased net interest income at the expense of its customers.

110. Morgan Stanley's conduct damaged Plaintiff and the Class.

111. Plaintiff, individually and on behalf of the Class, seeks all damages permitted by law.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### Brought on behalf of the Class against All Defendants

112. Plaintiff, on behalf of itself and the Class, hereby re-alleges the paragraphs above as if fully set forth herein.

113. As a result of Morgan Stanley's wrongful conduct, Plaintiff and the Class received lower interest payments on their cash and other deposits than they would have in a reasonable and

fair market.

114. As a result of Morgan Stanley's wrongful conduct, Morgan Stanley was unjustly enriched because it received significantly greater net interest income than it would have but for its wrongful conduct.

115. Morgan Stanley appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Class.

116. It would be inequitable and unjust for Morgan Stanley to retain these wrongfully obtained profits.

117. Morgan Stanley's retention of this wrongfully-obtained net interest income would violate the fundamental principles of justice, equity, and good conscience.

118. Plaintiff and the Class are entitled to restitution and disgorgement of the profits unjustly obtained, plus interest.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class (including the IRA Subclass), demands judgment and relief as follows:

1. For an order certifying the proposed Class and IRA Subclass, and appointing Plaintiff and its counsel to represent the proposed Class;

2. For an order awarding Plaintiff and Class members damages in an amount to be proven at trial, together with pre-trial and post-trial interest thereon;

3. For an order awarding Plaintiff and Class members restitution, disgorgement, or such other and further relief as the Court deems proper; and

4. For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees.

## JURY TRIAL DEMAND

Plaintiff, on behalf of itself and the Class (including the IRA Subclass), demands a trial by jury on all issues so triable.

DATED: June 14, 2024     Respectfully submitted,

           **WILLIAMS DIRKS DAMERON LLC**

           */s/ Matthew L. Dameron*
           Matthew L. Dameron  (NY Bar No. 5081773)
           Clinton J. Mann
           1100 Main Street, Suite 2600
           Kansas City, Missouri 64105
           Telephone:   (816) 945-7110
           Facsimile:   (816) 945-7118
           matt@williamsdirks.com
           cmann@williamsdirks.com

             and

           Thomas I. Sheridan, III
           Sona R. Shah
           **SIMMONS HANLY CONROY LLC**
           112 Madison Avenue
           New York, NY 10016
           Telephone:   (212) 784-6404
           Facsimile:   (212) 257-8482
           tsheridan@simmonsfirm.com
           sshah@simmonsfirm.com

             and

           Bruce D. Oakes
           Richard B. Fosher
           **OAKES & FOSHER, LLC**
           1401 Brentwood Boulevard, Suite 250
           Saint Louis, Missouri 63144
           Telephone:   (314) 804-1412
           Facsimile:   (314) 428-7604
           boakes@oakesfosher.com
           rfosher@oakesfosher.com

           ***Counsel for Plaintiff and the Proposed Class***