**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESTATE OF BERNARD J. SHERLIP, on behalf of
itself and all others similarly situated,

               Plaintiff,

      v.

MORGAN STANLEY, MORGAN STANLEY &
CO. LLC, and MORGAN STANLEY SMITH
BARNEY LLC,

               Defendants.

Civil Action No. 24-CV-4571 (VEC)

**ORAL ARGUMENT
REQUESTED**

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. LLC, and Morgan
Stanley Smith Barney LLC*

**TABLE OF CONTENTS**

P<small>AGE</small>

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ................................................................................................4

LEGAL STANDARDS ....................................................................................................9

      A.     The Heightened Pleading Standards of Rule 9(b) Apply........................................9

      B.     Choice of Law.................................................................................................10

ARGUMENT .................................................................................................................10

I.       Plaintiff's Claims Are Time-Barred...............................................................10

II.      Dr. Sherlip Expressly Waived Plaintiff's Claims ..........................................12

III.     The Complaint Fails To State a Claim for Breach of Contract.........................13

      A.     Plaintiff Cannot Allege That the BDP Interest Rates Paid to Dr. Sherlip Breached the Parties' Contract Governing His IRAs .............................................13

      B.     Plaintiff Does Not—and Cannot—Adequately Allege That the BDP Interest Rates Paid to Dr. Sherlip's Accounts Were Unreasonable .....................17

            1.     The BDP Rates Satisfy Plaintiff's Own Standard for Reasonableness .....17

            2.     As This Court Has Held, Plaintiff's Comparisons to Rates Offered for Different Financial Products Fail as a Matter of Law................................19

IV.    Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed .................21

      A.     Plaintiff Cannot Allege Any Breach of the Duty of Loyalty Because All Material Facts and Conflicts Relating to the BDP Were Disclosed .....................21

      B.     Plaintiff Cannot Allege Any Breach of Fiduciary Duty Based on the Interest Rates Paid in the BDP Program ...............................................................23

            1.     Brokerage Accounts Do Not Implicate Fiduciary Duties Absent Discretionary Trading Authority..............................................................24

            2.     As to Dr. Sherlip's Advisory Accounts, the BDP Rates Were Governed By Contract..............................................................................................25

      C.     Plaintiff's Breach of Fiduciary Duty Claim on Behalf of the IRA Subclass Should be Dismissed as Duplicative of Its Breach of Contract Claim .................28

V.      Plaintiff Cannot Allege Legally Compensable Damages as to its Breach of
        Contract or Breach of Fiduciary Duty Claims ...................................................29

VI.     Plaintiff's Unjust Enrichment Claim Fails.........................................................31

        A.      Dr. Sherlip's Binding Agreement with MSSB Precludes an Unjust
                Enrichment Claim ...................................................................................31

        B.      Plaintiff Fails to State a Claim for Unjust Enrichment ...........................32

VII.    If Any Claims Survive, Morgan Stanley and Morgan Stanley & Co. LLC Should
        Be Dismissed Because They Had No Relationship With Dr. Sherlip ..............................33

        CONCLUSION.................................................................................................35

TABLE OF AUTHORITIES

<span style="font-variant:small-caps">Cases</span>

<span style="font-variant:small-caps">Page(s)</span>

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009) ............................................................. 9–10

*Allen v. Fid. Brokerage Servs. LLC*,
    __ F. Supp. 3d ___, 2024 WL 135853 (S.D.N.Y. Jan. 12, 2024) ......................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ............................................................... 6, 10, 33–34

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 9

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006) ........................................................................... 31–32

*Bissell v. Merrill Lynch & Co.*,
    937 F. Supp. 237 (S.D.N.Y. 1996) ...................................................................... 24

*BNY Cap. Mkts., Inc. v. Moltech Corp.*,
    2001 WL 262675 (S.D.N.Y. Mar. 14, 2001) ....................................................... 26

*Bouchard v. State Emps. Ret. Comm'n*,
    178 A.3d 1023 (Conn. 2018) .......................................................................... 10–11

*Brooks v. Key Tr. Co. Nat'l Ass'n*,
    809 N.Y.S.2d 270 (3d Dep't 2006) ..................................................................... 29

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*,
    602 F. Supp. 3d 663 (S.D.N.Y. 2022) ................................................................ 28

*Collins v. City of N.Y.*,
    156 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................................. 6

*In re Colonial Ltd. P'ship Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) ........................................................................ 11

*Crigger v. Fahnestock & Co.*,
    2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003) ................................................... 24

*Daniel v. Aizenberg*,
    2023 WL 2541888 (S.D.N.Y. Mar. 16, 2023) ..................................................... 27

iii

*DeBlasio v. Merrill Lynch & Co.*,
  2009 WL 2242605 (S.D.N.Y. July 27, 2009) ............................................................ *passim*

*Dixon v. Blanckensee*,
  994 F.3d 95 (2d Cir. 2021) .......................................................................................... 9

*Emps. Reinsurance Co. v. Mass. Mut. Life Ins. Co.*,
  654 F.3d 782 (8th Cir. 2011) ..................................................................................... 11

*Gawrych v. Astoria Fed. Sav. & Loan*,
  148 A.D.3d 681 (2d Dep't 2017) ............................................................................... 30

*Goldman v. Metro. Life Ins. Co.*,
  5 N.Y.3d 561 (2005) ................................................................................................... 31

*Hartford Fire Ins. Co. v. Orient Overseas Containers (UK) Lines Ltd.*,
  230 F.3d 549 (2d Cir. 2000) ...................................................................................... 10

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009),
  *abrogated on other grounds by Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023) ............ 18

*In re Honda of Am. Mfg. ERISA Fees Litig.*,
  661 F. Supp. 2d 861 (S.D. Ohio 2009) ..................................................................... 18

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*,
  27 F. Supp. 3d 494 (S.D.N.Y. 2014) ......................................................................... 32

*Levitin v. PaineWebber, Inc.*,
  159 F.3d 698 (2d Cir. 1998) ...................................................................................... 33

*Litchfield Prop. Mgmt., Inc. v. Robert Holliday Reid*,
  2021 WL 4125920 (Conn. Super. Ct. Aug. 18, 2021) ............................................. 11

*LNC Invs. v. First Fid. Bank, N.A.*,
  173 F.3d 454 (2d Cir. 1999) ...................................................................................... 30

*Lowell v. Lyft, Inc.*,
  352 F. Supp. 3d 248 (S.D.N.Y. 2018) ....................................................................... 21

*Marano v. Metro. Museum of Art*,
  472 F. Supp. 3d 76 (S.D.N.Y. 2020) ......................................................................... 21

*Maya NY, LLC v. Hagler*,
  106 A.D.3d 583 (1st Dep't 2013) .............................................................................. 11

*Metro. Life Ins. Co. v. Noble Lowndes Int'l*,
  84 N.Y.2d 430 (1994) ................................................................................................. 13

*Morton v. Aizenberg*,
  2024 WL 1892435 (S.D.N.Y. Apr. 29, 2024) ..................................................... 23, 26

iv

*In re MPM Silicones, L.L.C.*,
    874 F.3d 787 (2d Cir. 2017) ............................................................................. 12

*Mueller v. Michael Janssen Gallery PTE. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016) .............................................................. 34

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    551 F. Supp. 3d 408 (S.D.N.Y. 2021) .............................................................. 21

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
    392 F.3d 520 (2d Cir. 2004) ............................................................................. 30

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*,
    30 N.Y.3d 572 (2017) ................................................................................ 13, 16

*Pane v. Citibank, N.A.*,
    19 A.D.3d 278 (1st Dep't 2005) ................................................................ 13, 27

*Parker Waichman LLP. v. Squier, Knapp & Dunn Commc'ns, Inc.*,
    138 A.D.3d 570 (1st Dep't 2016) ...................................................................... 30

*Prokolkin v. Gen. Motors Corp.*,
    365 A.2d 1180 (Conn. 1976) ............................................................................ 11

*Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*,
    760 F.2d 390 (2d Cir. 1985) ............................................................................. 16

*Rahl v. Bande*,
    328 B.R. 387 (S.D.N.Y. 2005) .................................................................... 30–31

*Randall's Is. Aquatic Leisure, LLC v. City of N.Y.*,
    92 A.D.3d 463 (1st Dep't 2012) ....................................................................... 34

*Rozsa v. May Davis Grp., Inc.*,
    187 F. Supp. 2d 123 (S.D.N.Y. 2002),
    *aff'd sub nom Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006) ................. 25

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*,
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) ............................................................... 34

*Seabury Constr. Corp. v. Jeffrey Chain Corp.*,
    289 F.3d 63 (2d Cir. 2002) ............................................................................... 16

*Straily v. UBS Fin. Servs.*,
    2009 WL 798830 (D. Colo. Mar. 24, 2009) ................................................ 23, 27

*Tolbert v. Conn. Gen. Life Ins. Co.*,
    778 A.2d 1 (Conn. 2001) .................................................................................. 11

*Torres v. Walker*,
    356 F.3d 238 (2d Cir. 2004) ........................................................................ 12–13

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
    2021 WL 3668092 (S.D.N.Y. Aug. 17, 2021) ....................................................... 31

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2023 WL 2918982 (S.D.N.Y. Mar. 21, 2023) ............................................... 19–20

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2023 WL 4239073 (S.D.N.Y. June 28, 2023) ........................................ 3, 19–20

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) ...................................................... 15

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020) ............................................................. 19

*Wade Park Land Holdings, LLC v. Kalikow*,
    589 F. Supp. 3d 335 (S.D.N.Y. 2022) ............................................................. 17

*Welch v. TD Ameritrade Holding Corp.*,
    2009 WL 2356131 (S.D.N.Y. July 27, 2009) .................................. 29–30, 32–33

*Wen v. N.Y. City Reg'l Ctr., LLC*,
    695 F. Supp. 3d 517 (S.D.N.Y. 2023) ............................................................. 23

*Yuille v. Uphold HQ Inc.*,
    686 F. Supp. 3d 323 (S.D.N.Y. 2023) ............................................................. 13

*Yung v. Lee*,
    432 F.3d 142 (2d Cir. 2005) ........................................................................ 5–6

*Zorbas v. U.S. Tr. Co.*,
    48 F. Supp. 3d 464 (E.D.N.Y. 2014)) ............................................................. 26

## STATUTES & RULES

17 C.F.R. § 240.15l-1 (2019) ........................................................................... 24

26 C.F.R. § 54.4975-6(b)(3)(i) ......................................................................... 15

29 U.S.C. § 4975(d)(4) ............................................................................. 15, 19

Conn. Gen. Stat. § 52-576(a) .......................................................................... 10

Conn. Gen. Stat. § 52-577 .............................................................................. 11

Fed. R. Civ. P. 8 ........................................................................................... 21

Fed. R. Civ. P. 9(b) ............................................................................... 9–10, 21

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5–6

N.Y. C.P.L.R. 202 ................................................................................................................ 12

N.Y. Gen. Oblig. Law § 17-103(3) .................................................................................... 12

OTHER AUTHORITIES

Commission Interpretation Regarding Standard of Conduct for Investment Advisers,
    Release No. 5248, 84 Fed. Reg. 33669, 33671 (July 12, 2019) ............................................ 26

H.R. Rep. No. 93-1280 (1974) (Conf. Rep.),
    *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5094 .................................................................. 20

Regulation Best Interest, 83 Fed. Reg. 21574, 21584
    (proposed May 9, 2018) (codified at 17 C.F.R. pt. 240) ................................................. 24–25

Defendants Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley Smith Barney LLC ("MSSB") (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Class Action Complaint (ECF No. 1) (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiff's Complaint should be dismissed with prejudice because it was filed well outside all applicable statutes of limitations, is barred by a contractual waiver, and fails to state a claim upon which relief can be granted.

This case concerns MSSB's "cash sweep" or Bank Deposit Program ("BDP"), a feature of investment accounts that Dr. Bernard J. Sherlip opened with MSSB in 2012. When customers had uninvested cash in their accounts—whether because they were in the process of deciding how to invest it, or needed it to pay account expenses, or needed short-term liquidity for some other purpose—the BDP swept that cash into bank deposit accounts so that, rather than remain idle, the cash would be FDIC insured, remain fully liquid, and earn some rate of interest. The contract that Dr. Sherlip entered into with MSSB when he opened his accounts in 2012 fully disclosed how the BDP worked, as well as the fact that MSSB and its affiliated banks earned compensation from the funds deposited into the BDP including the "spread" between the rates paid to clients on their BDP balances and the rates MSSB's affiliated banks could earn by loaning or investing those funds. MSSB also disclosed the rates that would be paid in the BDP, that those rates may be lower than other alternatives, that MSSB and the sweep banks had "sole discretion" in setting those rates, and that customers like Dr. Sherlip should compare the rates and characteristics of the BDP program to other available alternatives. Customers were able to opt out of the BDP and, of course, were always free to decide (or instruct their financial advisor) not to leave money sitting uninvested in their accounts.

1

Plaintiff, the Estate of Bernard J. Sherlip, alleges that "[t]he rates paid by Morgan Stanley to its customers pursuant to the BDP violate Morgan Stanley's duties to its customers because these rates are not reasonable, which constitutes a breach of Morgan Stanley's fiduciary and contractual duties to its customers and a violation of Regulation Best Interest." (Compl. ¶ 25.) Plaintiff also alleges that Defendants failed to make adequate disclosures regarding the BDP, including their ability to profit from the program, though the Complaint never actually identifies those disclosures or how they were allegedly deficient. Based on these allegations, Plaintiff brings claims for breach of contract, breach of fiduciary duty, and unjust enrichment. These claims fail for a number of independent reasons.

*First*, the claims are time-barred. Dr. Sherlip entered into his contract with MSSB twelve years ago, at which time MSSB disclosed the rates that would be paid in the BDP, that MSSB and the sweep banks had sole discretion in setting those rates, and that MSSB and its affiliates received various benefits from the BDP. Dr. Sherlip's claims accrued in 2012, well outside all applicable statutes of limitations.

*Second*, in his contract with MSSB, Dr. Sherlip agreed that MSSB "is not responsible" if the BDP has a lower rate of return than other alternative investments. This disclaimer of liability is enforceable, and precludes Plaintiff's claims, all of which are based on the allegation that the BDP rate of return was too low.

*Third*, even if they were not untimely and contractually barred, each of Plaintiff's claims fails as a matter of law.

The breach of contract claim, which is limited solely to IRA account holders, fails because the BDP operated exactly as the parties agreed in their contract. Nonetheless, Plaintiff purports to rely on a customer authorization provision in the contract which refers to "reasonable

rates"—a provision which, as the Complaint alleges, is designed to comply with certain IRA Plan rules under the Internal Revenue Code—and argues that the BDP rates were not "reasonable" because they were lower than rates offered by money market funds and rates offered by Fidelity and Vanguard on dissimilar products.  But as this Court held in *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 4239073, at *5 (S.D.N.Y. June 28, 2023), comparing demand deposit accounts to money market funds or other inherently different products is not a valid basis under the law to deem demand deposit rates "unreasonable." Moreover, the argument that there is a contractual obligation to pay "reasonable" rates which supersedes the other specific provisions in the contract regarding interest rates, including the provision that MSSB and the sweep banks have "sole discretion" to set those rates and that MSSB "is not responsible" if those rates are lower than other alternatives, misconstrues the parties' contract and would render critical portions of the agreement meaningless.  Notably, in *Valelly*, the relevant contractual provision regarding "reasonable rates" was different from the one present here, and no issue was raised concerning the purpose of this provision and how it related to other portions of the contract.

The breach of fiduciary duty claim fails as well.  Plaintiff fails to plead a breach of the duty of loyalty because the contract, including the BDP Disclosure Statement incorporated within it, expressly and fully disclosed any conflicts of interest that MSSB and its bank affiliates had regarding the BDP.  With respect to the duty of care, Plaintiff does not allege that Dr. Sherlip's investment adviser gave any advice with respect to keeping funds in the BDP.  Rather than allege a breach of the duty of care based on *investment advice*, Plaintiff's claim is based on the rates paid in the BDP—a feature of the accounts *governed by the parties' contract*. Accordingly, Plaintiff cannot assert a duty of care claim on this basis.  To the extent Plaintiff

relies on the SEC's Regulation Best Interest ("Reg. BI"), the automatic sweeping of cash into the BDP does not represent an investment recommendation and does not implicate that regulation. Moreover, the law is clear that Reg. BI does not establish a private right of action and cannot be used as the basis for a breach of fiduciary duty claim.

In addition, while the BDP allowed customers to gain FDIC protection on otherwise idle cash and earn some interest during the temporary periods when it remained uninvested, customers were also told that they could choose not to participate in the BDP, and of course, were always free not to leave cash uninvested. Accordingly, as a matter of law, Defendants cannot be responsible for any "losses" associated with rates that were paid (and fully disclosed) on uninvested cash swept into the BDP, and Plaintiff has no legally cognizable damages claim.

With respect to Plaintiff's unjust enrichment claim, a quasi-contract claim fails where, as here, a binding contract governs the matter. And in any event, where the pertinent facts concerning the BDP were fully disclosed, and customers had the option not to participate in the program, there can be no basis for a claim of unjust enrichment.

For these reasons, as more fully described below, the Complaint should be dismissed with prejudice.

### STATEMENT OF FACTS[1]

Plaintiff alleges that Dr. Sherlip had investment accounts with MSSB[2] from November 2012 to August 2022. (Compl. ¶ 80.) Dr. Sherlip had retirement and non-retirement brokerage

---

[1] This Statement of Facts is drawn from allegations in the Complaint and supplemented by documents that are incorporated by reference in the Complaint or otherwise appropriate for judicial notice. For purposes of this Motion to Dismiss only, Defendants assume, without conceding, that the factual allegations in the Complaint are true.

[2] The Complaint does not specify which Defendant Dr. Sherlip's accounts were with, but documents integral to the Complaint identify that MSSB is the only Defendant with which Dr. Sherlip had accounts. (*See, e.g.*, Ex. A (Dr. Sherlip's account opening signature pages with MSSB, acknowledging the terms of the contract between Dr. Sherlip and MSSB) at 1.)

accounts, and MSSB was the investment adviser for "one of Dr. Sherlip's personal accounts (ending in 656-056) and one of his IRAs (ending in 819-056)." (*Id.* ¶¶ 80–81.)

The BDP is a program that automatically sweeps eligible account holders' uninvested cash from brokerage and/or advisory accounts—which would otherwise lack FDIC protection and remain idle—into FDIC-insured bank deposit accounts. (*Id.* ¶¶ 13–14, 19.) Each of Dr. Sherlip's accounts participated in the BDP. (*Id.* ¶ 83.)

Plaintiff filed this putative class action on behalf of "[r]etail customers of Morgan Stanley who had cash deposits or balances in Morgan Stanley's Bank Deposit Program," without specifying the putative class period. (*Id.* ¶ 86.) Plaintiff also purports to represent a subclass of "[r]etail customers of Morgan Stanley who had cash deposits or balances in Morgan Stanley's Individual Retirement Plan, Roth IRA, or SIMPLE IRA" (the "IRA Subclass"), though again no putative class period is identified. (*Id.* ¶ 87.) Plaintiff asserts three claims for relief—breach of contract, breach of fiduciary duty, and unjust enrichment—each based on the alleged inadequacy of the rates paid in the BDP and of Defendants' disclosures regarding the BDP (*id.* ¶¶ 66–67), though the Complaint never describes what those disclosures actually said.

The Complaint does not identify the specific contract documents governing Dr. Sherlip's accounts, other than to refer to the contract generally and to cite certain provisions in Morgan Stanley's Individual Retirement Plan (sponsored by MSSB) effective as of October 1, 2012. (*Id.* ¶ 51 (the "IRA Plan").)[3] However, because the Complaint references and relies upon the parties' contract, and because it is integral to the Court's assessment of Plaintiff's allegations, it may be considered on this motion to dismiss.[4]

---

[3] The Complaint also cites the same provisions of Morgan Stanley's Roth IRA and SIMPLE IRA Plans, effective as of October 1, 2012. (*Id.* ¶¶ 52–53.)

[4] *See, e.g.*, *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) ("In addition to the allegations in the complaint, we also

Together with the IRA Plan, the Client Agreement between MSSB and Dr. Sherlip was sent to him on December 1, 2012. (Ex. B.)[5] As a part of opening his accounts with MSSB, Dr. Sherlip signed forms acknowledging and agreeing to the terms and conditions of the Client Agreement, which applied to all of his various accounts.[6]

The Client Agreement stated the following under a heading entitled "Sweep":

- "You acknowledge and agree that, if your account is eligible, we are authorized without further direction from you to automatically deposit or 'sweep' all the free credit balances in your account into one or more FDIC insured depository institutions ('Sweep Banks') affiliated with us as more particularly set forth in the Bank Deposit Program Disclosure Statement, which is available at www.morganstanley.com/wealth/accountoptions/ activeassets/investmentfeatures and will be sent to you upon your first deposit in the Program, and by which you agree to be bound." (Ex. B at 14.)

- "You further acknowledge and agree that the rate of return on the Bank Deposit Program may be higher or lower than the rate of return available on other available sweep investments. You agree that MSSB is not responsible to you if the Bank Deposit Program has a lower rate of return than the other available sweep investments or causes any tax consequences resulting from your investment in the Bank Deposit Program by default." (*Id.*)

consider on a Rule 12(b)(6) motion any written instrument attached to [the complaint] as an exhibit, any statements or documents incorporated in it by reference, and any document not incorporated but that is, nevertheless, integral to the complaint because the complaint relies heavily upon its terms and effect."(quotation marks omitted)); *see also ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on a motion to dismiss, courts "may consider . . . documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); *Collins v. City of N.Y.*, 156 F. Supp. 3d 448, 455 n.4 (S.D.N.Y. 2016) (Caproni, J.) (considering an EEOC charge on motion to dismiss as "integral to the Complaint" where it was referenced in the complaint and served as a prerequisite to plaintiff's claims).

[5] As stated in the introductory paragraph of the IRA Plan, the "IRA consists of the [IRA] Plan document, and the separate Morgan Stanley Adoption Agreement and Morgan Stanley Smith Barney LLC Client Agreement." (Ex. B at 21.) The Adoption Agreement applicable to Dr. Sherlip's IRA Plan is attached as Exhibit C.

[6] *See* Ex. A (B. Sherlip signature pages) 1, 6; *see also* Ex. B (MSSB to B. Sherlip correspondence attaching, *inter alia*, IRA Plan and Client Agreement (Dec. 1, 2012)) at 11 n.* ("The Client Agreement is applicable to all domestic Active Assets Accounts and Individual Retirement Accounts (Traditional/Rollover/Roth/Inherited/CESA/SEP/SAR-SEP and SIMPLE IRAs).")

Under a heading entitled "Fees, Charges and Compensation Earned by MSSB," the Client Agreement further stated:

- "As set forth in the Bank Deposit Program Disclosure Statement, you understand and agree that MSSB or its affiliates may earn additional compensation through the investment of your account(s) in the sweep vehicles noted above."  (*Id.* at 14–15.)

The BDP Disclosure Statement, which was incorporated and linked to in the Client Agreement (*id.* at 14), contained additional disclosures.  It explained that, unless clients opted out, their uninvested free cash balances would automatically be swept into deposit accounts at a number of banks, including Morgan Stanley affiliates Morgan Stanley Bank, N.A. and Morgan Stanley Private Bank, National Association (collectively, the "Sweep Banks"), where it would be FDIC-insured up to available limits.  (*See* Ex. D at 3, 4 ("You may, however, contact your Financial Advisor or Private Wealth Advisor to block deposits to" the Sweep Banks).)

The BDP Disclosure Statement (which refers to MSSB as "Morgan Stanley" (*see, e.g.*, *id.* at 3)) also provided Dr. Sherlip with information and disclosures regarding the interest that would be paid in the BDP, including:

- providing a link to real-time BDP interest rates published online, which remains active.  (*Id.* at 5; *see also* Compl. ¶ 24 n.4);

- disclosing that interest rates "may be higher or lower than the interest rates available on other deposit accounts offered by a Sweep Bank or on deposit accounts offered by other depository institutions."  (*Id.* at 5); and

- informing account holders that they should "compare the terms, interest rates, required minimum amounts, and other features of the Deposit Accounts with other deposit accounts and alternative cash investments."  (*Id.*)

The BDP Disclosure Statement also included disclosures describing potential conflicts of interest on the part of MSSB and its affiliates concerning the BDP.  For example:

- "Morgan Stanley and the Sweep Banks reserve the right to change the interest rates without prior notice to you or the methodology used to

7

determine the interest rates on Deposit Accounts in their sole discretion." (*Id.* at 5.)

- "Our ability to influence the rate on your Deposit Accounts presents a conflict of interest." (*Id.*)

- "Each Sweep Bank will pay Morgan Stanley a fee equal to the percentage of the average daily deposit balances in your Deposit Account at the Sweep Bank. The fee paid to Morgan Stanley may be a substantial portion of the amount the Sweep Bank is paying on the Deposit Accounts. . . . The amount of fee received by Morgan Stanley will affect the interest rate paid by the Sweep Bank on your Deposit Accounts." (*Id.* at 6.)

- The asset-based fee charged by financial advisors for managed accounts "include[s] cash held in the Program." (*Id.*)

- "Morgan Stanley, the Sweep Banks and their affiliates may receive other financial benefits in connection with the Program. Through the Program, each Sweep Bank will receive a stable, cost-effective source of funding. Each Sweep Bank intends to use deposits in the Deposit Accounts at the Sweep Bank to fund current and new businesses, including lending activities and investments. The profitability on such loans and investments is generally measured by the difference, or 'spread,' between the interest rate paid on the Deposit Accounts at the Sweep Bank and other costs of maintaining the Deposit Accounts, and the interest rate and other income earned by the Sweep Bank on those loans and investments made with the funds in the Deposit Accounts. The income that a Sweep Bank will have the opportunity to earn through its lending and investing activities is expected to be greater than the fees earned by Morgan Stanley and its affiliates from managing and distributing the money market funds available to you as a sweep investment." (*Id.* at 6–7.)

The BDP Disclosure Statement also informed Dr. Sherlip that "you may at any time terminate your participation in the Program." (*Id.* at 8.)

The Complaint alleges that two of Dr. Sherlip's accounts were advisory accounts (Compl. ¶ 81 (referring to account ending in -656 and account ending in -819).) In addition to the Client Agreement, these accounts were each governed by a Single Advisory Contract ("SAC") from the time that they became advisory accounts in 2017. (*See* Ex. E (MSSB to B. Sherlip correspondence attaching, *inter alia*, SAC for account -819 (Feb. 1, 2017)) at 11 ("This Agreement . . . and any Client Agreement constitute the entire agreement between the parties.");

8

Ex. F (MSSB to B. Sherlip correspondence attaching, *inter alia*, SAC for account -656 (Nov. 2, 2017)) at 9 (same).)  In a section entitled "Other Services Provided in the Advisory Programs; Sweep Program," the SACs, like the Client Agreement, disclose that "[a]ll uninvested cash and allocations to cash in your account will automatically 'sweep' into interest-bearing bank deposit accounts . . . established under a bank deposit program (the 'Bank Deposit Program')" and that funds in the BDP are included in MSSB's fee calculation, and refers clients to the BDP Disclosure Statement for more information about the BDP.  (*See* Ex. E at 18–19; Ex. F at 17.)

## LEGAL STANDARDS

### A.    The Heightened Pleading Standards of Rule 9(b) Apply

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice.  *See, e.g.*, *Dixon v. Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).  Dismissal is appropriate where, as here, the plaintiff fails to plead factual allegations sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Because the Complaint alleges that Defendants engaged in deceptive and misleading conduct, it must also satisfy Rule 9(b)'s heightened pleading standards.  (*See, e.g.*, Compl. at 1 (alleging Defendants engaged in a "ruse" whereby "customers' cash balances are used by Morgan Stanley to generate massive profits for itself")); *see also DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to complaint challenging "deceptive and misleading" cash sweep program) ; *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty—statutory, common law, tort,

contractual, or fiduciary.").  Pursuant to Rule 9(b), Plaintiff's allegations of deceptive and

misleading conduct must be pled with particularity.  *See DeBlasio*, 2009 WL 2242605 at *9–10.

"Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

### B.    Choice of Law

The Client Agreement provides that "[e]xcept for the statute of limitations applicable to

claims, this Agreement is governed by the laws of the State of New York . . . without giving

effect to principles of the conflict of laws."  (Ex. B at 11.)  It further provides that "[t]he statute

of limitations applicable to any claim . . . shall be that which would be applied by the courts in

the state in which [the account holder] reside[s]."  (*Id.* at 20.)  Dr. Sherlip resided in Connecticut.

(Compl. ¶ 1.)  In actions involving contracts with express choice-of-law provision, New York

law "is clear" that "[a]bsent fraud or violation of public policy, a court is to apply the law

selected in the contract as long as the state selected has sufficient contacts with the transaction."

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d

Cir. 2000).  Thus, while New York law governs the substance of this action, Connecticut's

statutes of limitations apply to the extent they do not violate New York public policy.

### ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's claims are all barred by the applicable statutes of limitations.  Based on the

Complaint's own allegations, the limitations period began to run on each of Plaintiff's claims

nearly twelve years ago.  The longest applicable statute of limitations is six years.

Under Connecticut law, the statute of limitations for breach of contract claims is six years

(Conn. Gen.  Stat. § 52-576(a)), and the claim accrues at the time of breach, regardless of

plaintiff's awareness of the injury.  *See, e.g.*, *Bouchard v. State Emps. Ret. Comm'n*, 178 A.3d

1023, 1036 (Conn. 2018) ("[I]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute . . . ."); *Tolbert v. Conn. Gen. Life Ins. Co.*, 778 A.2d 1, 5 (Conn. 2001); *Emps. Reinsurance Co. v. Mass. Mut. Life Ins. Co.*, 654 F.3d 782, 793 (8th Cir. 2011) (applying Connecticut law) ("[T]he occurrence of an act or omission—whether it is a breach of contract or of duty—that causes a direct injury, however slight, may start the statute of limitations running against the right to maintain an action even if the plaintiff is not aware of the injury, and even if all resulting damages have not yet occurred; it is sufficient if nominal damages are recoverable for the breach or for the wrong, and where that is the case, it is unimportant that the actual or substantial damage is not discovered or does not occur until later.").  For breach of fiduciary duty claims, Connecticut law requires claims to be brought within three years "from the date of the action or omission complained of," regardless of plaintiff's awareness of the injury.  Conn. Gen. Stat. § 52-577; *see, e.g., In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 90 (D. Conn. 1994); *Emps. Reinsurance Co.,* 654 F.3d at 793; *Prokolkin v. Gen. Motors Corp.*, 365 A.2d 1180, 1183–84 (Conn. 1976).  Plaintiff's breach of contract and fiduciary duty claims accrued in 2012, when the parties entered into their contract and the terms of the BDP were disclosed, well outside the applicable statutes of limitations.

With regard to unjust enrichment, a claim under Connecticut law is subject to the equitable doctrine of laches.  *See Litchfield Prop. Mgmt., Inc. v. Robert Holliday Reid*, 2021 WL 4125920, at *4–5 (Conn. Super. Ct. Aug. 18, 2021).  However, to the extent that Connecticut law would result in an extension of New York's six-year statute of limitations for unjust enrichment claims,[7] New York's General Obligations Law would render unenforceable an agreement to

---

[7] *See Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013) (six-year statute of limitations for unjust enrichment claims "based upon the same facts and pleaded in the alternative" to a breach of contract claim).

extend the limitations period as a matter of public policy, and New York's borrowing statute would require that the claim be timely in both New York and Connecticut. *See* N.Y. Gen. Oblig. Law § 17-103(3) (pre-accrual promise to extend statute of limitation "has no effect"); N.Y. C.P.L.R. 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued"). Plaintiff's unjust enrichment claim, which is premised on the same alleged breaches underlying the contract and fiduciary duty claims, is untimely for the same reasons as those claims.[8]

## II.    DR. SHERLIP EXPRESSLY WAIVED PLAINTIFF'S CLAIMS

When Dr. Sherlip opened his accounts in 2012, he expressly "agree[d] that MSSB is not responsible to [him] if the Bank Deposit Program has a lower rate of return than the other available sweep investments." (Ex. B (correspondence attaching, *inter alia*, Client Agreement) at 14.[9]) Plaintiff's claims fall within the scope of this waiver because the Complaint's core allegation is that the BDP provides a lower rate of return than other options and as a result fails to pay a "reasonable rate" of interest. (*See, e.g.*, Compl. ¶¶ 59–62, 66–67, 77.) Dr. Sherlip has therefore waived his claims asserted in this action.

A "fundamental objective of contract interpretation" under New York law is "to give effect to the expressed intention of the parties." *In re MPM Silicones, L.L.C.*, 874 F.3d 787, 795 (2d Cir. 2017). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the

---

[8] Even if New York's borrowing statute and General Obligations Law did not prohibit a limitations period of greater than six years for unjust enrichment claims, given the passage of twelve years, Plaintiff's claim would also be barred by the doctrine of laches, particularly where the Complaint alleges no basis for the delay.

[9] Even if this action had been brought by a plaintiff who opened his accounts within the applicable six-year statute of limitations, a substantively similar waiver provision was in the Client Agreement as of that date. (*See* Ex. G (Morgan Stanley Client Agreement (Apr. 2018) at 6.)

unambiguous terms of the agreement itself." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004). This includes limitations of liability clauses, as in the case here. *See, e.g.*, *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 354 (S.D.N.Y. 2023) ("Under New York law, contractual limitation of liability clauses are generally enforceable . . . ."); *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017) ("[C]ourts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities") (citing *Metro. Life Ins. Co. v. Noble Lowndes Int'l*, 84 N.Y.2d 430, 436 (1994)).

The Client Agreement unambiguously disclaims liability if the BDP offers lower interest rates than other alternatives. Thus, even if Plaintiff is correct that BDP rates were lower than other alternatives, the contract bars Plaintiff's claims. *See, e.g.*, *Pane v. Citibank, N.A.*, 19 A.D.3d 278, 278 (1st Dep't 2005) (affirming dismissal of breach of contract and negligence claims based on investment manager's alleged failure to comply with oral instructions "in view of the plain language of the parties' agreement relieving defendant of liability for any losses resulting from its acting or refusing to act on instructions that were not in writing").

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Even if the Complaint were not barred, the breach of contract claim related to Dr. Sherlip's IRA accounts fails for a number of independent reasons described below.

### A.    Plaintiff Cannot Allege That the BDP Interest Rates Paid to Dr. Sherlip Breached the Parties' Contract Governing His IRAs

Plaintiff's theory of breach—that the rates Dr. Sherlip received from the BDP for his IRAs were unreasonable because they were lower than the rates provided on other financial products—is fundamentally at odds with the express terms of the parties' contract governing interest rates, which disclosed that exact possibility. As described above, the contract—in a

provision expressly concerning BDP interest rates—disclosed that interest rates paid on BDP deposits "may be higher or lower" than those available elsewhere.  (Ex. D (Morgan Stanley BDP Disclosure Statement (Oct. 2012)) at 5 ("Interest on the Deposit Accounts" provision).)  The contract also expressly stated that "Morgan Stanley and the Sweep Banks reserve the right to change the interest rates . . . in their sole discretion."  (*Id.*)  The contract instructed account holders to "compare the terms, interest rates, . . . and other features of the Deposit Accounts with other deposit accounts and alternative cash investments."  (*Id.*)  Further, the contract informed account holders that real-time interest rates for the BDP were publicly available on Morgan Stanley's website and provided a link to where Morgan Stanley continuously disclosed the current rates.  (*Id.*)  And the contract notified account holders that the interest they earned from the BDP would be disclosed monthly in account statements.  (*Id.* at 4, 7.)

Plaintiff does not allege that MSSB failed to comply with any of these terms.  Plaintiff admits that BDP interest rates were disclosed.  (Compl. ¶¶ 23–24.)  Plaintiff does not allege that Defendants failed to pay interest at the disclosed rates, or that interest rates were set any differently from the process explained in the contract.  Instead, despite the fact that the contract states that BDP rates may be lower than other alternatives, that liability is disclaimed if the rates are lower, and that MSSB and the Sweep Banks may set those rates "in their sole discretion," Plaintiff alleges a breach of contract on the purported basis that the rates paid to IRA account holders were not reasonable because they were lower than rates available on other products.

Even if Plaintiff had a valid legal basis to claim that the rates were not "reasonable"— which Plaintiff does not (see *infra* Section III.B)—Plaintiff's argument, as a threshold matter, misconstrues the parties' contract.  Plaintiff relies on client authorization provisions that only appear in the IRA Plans authorizing MSSB to deposit uninvested cash into accounts bearing a

"reasonable rate" of interest.  (*See* Compl. ¶¶ 43–53; Ex. B at 26 § 3.3(a) ("The Participant authorizes the deposit or investment of cash balances in the Account in . . . deposit accounts with Morgan Stanley Bank, N.A. and/or any other banking affiliate of the Custodian that bear a reasonable rate of interest[.]"), 30 § 6.2(g) ("The Custodian shall have the following powers and authority . . . . To invest and reinvest the assets of the Account in deposits of an affiliate or affiliates which bear a reasonable rate of interest."); Ex. H (Morgan Stanley Roth IRA (Oct. 1, 2012) at §§ 3.3(a) (same), 6.2(g) (same); Ex. I (Morgan Stanley SIMPLE IRA Plan (Oct. 1, 2012)) §§ 3.3(a) (same), 6.2(g) (same.).[10]  The sections of the IRA Plan in which this language appears address "Cash Balances" and "Investment Powers," in contrast to the portions of the BDP Disclosure Statement cited above which expressly address "Interest" in the BDP.  As the Complaint acknowledges, this client authorization provision in the IRA Plan is required to qualify for exemptions to prohibited transaction rules under the Internal Revenue Code ("IRC"). (Compl. ¶¶ 43–48, 50 (citing 29 U.S.C. § 4975(d)(4) (permitting "the investment of all or part of a plan's assets in deposits which bear a reasonable interest rate . . . [if] such investment is expressly authorized by a provision of the plan"); 26 CFR § 54.4975-6(b)(3)(i) ("in the case of a bank or similar financial institution that invests plan assets in deposits in itself or its affiliates under an authorization contained in a plan . . . such authorization must . . . state that such bank or similar financial institution may make investments in deposits which bear a reasonable rate of interest").[11]  Thus, to the extent that the reasonable rate language referenced in the client

---

[10] These provisions differ from the one that was before this Court in *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 2021 WL 240737 (S.D.N.Y. Jan. 25, 2021).  In *Valelly,* rather than being framed as a client authorization, the contract included an affirmative statement that "interest paid on retirement account assets will be at no less than a reasonable rate."  *Id.* at *1.

[11] The Complaint also cites analogous rules under ERISA (Compl. ¶ 49) which stand for the same principle, though because Dr. Sherlip's retirement accounts are IRAs, ERISA does not actually apply.

authorization has legal significance, it is to ensure compliance with Internal Revenue Code provisions which are not at issue here.

Moreover, as a matter of New York contract law, the language cited by Plaintiff cannot constitute an obligation to pay a "reasonable rate" of interest because that construction would displace the specific provisions of the Client Agreement addressing interest rates and what account holders could and could not expect to receive.  Indeed, Dr. Sherlip agreed that MSSB and the Sweep Banks had "sole discretion" regarding the rates, that MSSB was "not responsible" if the rates were lower than other alternatives, and that, to the extent he sought higher rates of return on uninvested cash, he accepted responsibility for "compar[ing] the terms, interest rates, . . . and other features of the Deposit Accounts with other deposit accounts and alternative cash investments."  (Ex. B (correspondence attaching, *inter alia*, Client Agreement) at 14; Ex. D (BDP Disclosure Statement) at 5.)

It is a well-settled principle of contract law that contracts should be construed as a whole in a manner that avoids rendering provisions meaningless or ineffectual.  *See, e.g.*, *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69 (2d Cir. 2002) ("General canons of contract constructions require that 'where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect.'") (quoting *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 395–96 (2d Cir. 1985)); *Nomura Home Equity Loan, Inc., Series 2006-FM2*, 30 N.Y.3d at 601–02 ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." (quotation marks omitted)).  The specific provisions in the Client Agreement addressing the setting of interest rates in the BDP, including that Morgan Stanley and the Sweep Banks have "sole discretion" to set those rates and that

MSSB is "not responsible" to account holders if the rates are lower than other alternatives, would be rendered meaningless or ineffectual if the general client authorization provision relating to IRC rules could be a basis for account holders to sue for damages on the grounds that the BDP rates were lower than rates offered elsewhere.  *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 393 (S.D.N.Y. 2022) (Under New York contract law, "[w]here there is tension between provisions, the more specific governs over the general.").

**B.      Plaintiff Does Not—and Cannot—Adequately Allege That the BDP Interest Rates Paid to Dr. Sherlip's Accounts Were Unreasonable**

Even if MSSB had a contractual obligation to pay a "reasonable rate" of interest on cash in the BDP, Plaintiff has failed to plead a claim.

### 1.      The BDP Rates Satisfy Plaintiff's Own Standard for Reasonableness

Although Plaintiff acknowledges that the "reasonable rate" language in the contract refers to language from specific provisions of the IRC and ERISA, the Complaint relies on three separate definitions to allege the BDP rates were unreasonable.  (Compl. ¶¶ 56–58.)  Even accepting *arguendo* Plaintiff's definitions of reasonableness, Plaintiff's claim fails as a matter of law.  According to Plaintiff, Black's Law Dictionary defines "reasonable" as synonymous with "fair" and "proper."  (*Id.* ¶ 56.)  The IRS defines "arm's-length interest rate" as the rate that would be charged "in independent transactions with or between unrelated parties under certain circumstances."  (*Id.* ¶ 57.)  And the Department of Labor stated that a "reasonable" rate of interest includes "a rate of interest determinable by reference to short-term rates available to other customers of the bank."  (*Id.* ¶ 58.)  Taken together, these alleged definitions espouse that interest rates are reasonable where they are independently applied and accepted across a number of unrelated customers.  The BDP interest rates operate in exactly that manner.

The BDP interest rate structure that applied to Dr. Sherlip's accounts applies to all account holders that use the BDP, both IRA account holders and other account holders.  (*See, e.g.*, Compl. ¶ 24.)  Real-time BDP interest rates are publicly available online to all.  (*Id.*)  Additionally, all customers accept responsibility for comparing BDP rates to other products in the market.  (Ex. D (BDP Disclosure Statement) at 5.)  Dr. Sherlip, along with every other member of the putative IRA Subclass, made an arm's-length decision, following robust disclosures by MSSB, to maintain IRA accounts with MSSB and utilize the BDP in lieu of other available options.  As the Complaint identifies, investors have a choice of using many financial institutions and products, including for IRA accounts.  (*See* Compl.  ¶¶ 59-60, 76.)  If investors were not satisfied with the BDP, they could have established IRA accounts with any other broker to access different sweep products or rates.  Additionally, without moving their funds, investors always had the options of terminating their participation in the BDP or simply investing their available cash so that it would not be swept into the BDP.  (*See, e.g.*, Ex. D at 8.)

That numerous independent investors affirmatively chose to participate and remain in the BDP forecloses the claim that the rates were not "reasonable."  Courts have recognized that customers' decisions to use a particular financial product rather than pursue myriad alternative opportunities demonstrates reasonableness of the product's financial terms as a matter of law. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (noting, in dismissing claim that defendants caused plan to invest in options with excessive fees, that, "[i]mportantly, all of these funds were also offered to investors in the general public, and so the expense ratios necessarily were set against the backdrop of market competition"), *abrogated on other grounds by Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023); *In re Honda Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009) (same).

Similarly, just as numerous investors chose to use the BDP to receive FDIC protection, complete liquidity, minimal risk, and some rate of interest on their *uninvested* cash, millions of investors do the same every day when they keep money in bank checking accounts at very low or no rates of interest. Plaintiff cannot plead a breach of contract claim by arguing in hindsight that such rates are not "reasonable," particularly where, as here, they have been informed of the rates and agreed upon the method and manner by which the rates were set. Indeed, the legislative history of the very IRC "reasonable rate" provision Plaintiff relies upon, 29 U.S.C. § 4975(d)(4) (*see* Compl. ¶ 46), explains that "it is expected that generally these rules will not be violated if all plan assets in an individual account plan are invested in a federally-insured account." H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *as reprinted* in 1974 U.S.C.C.A.N. 5038, 5094.

2.    As This Court Has Held, Plaintiff's Comparisons to Rates Offered for Different Financial Products Fail as a Matter of Law

Plaintiff additionally fails to allege that the BDP rates are unreasonable by comparison to the interest rates of money market mutual funds and financial products offered by Vanguard and Fidelity. (Compl. ¶¶ 59–62.) The Complaint does not include any allegations regarding the nature of those products, which is not surprising because those products differ materially from the BDP and the accounts held by Dr. Sherlip. This is fatal to Plaintiff's claim. As this Court has previously held, "Plaintiff cannot use the interest rate paid on one type of investment vehicle to prove that the interest rate paid on a different type of investment vehicle is not reasonable." *Valelly*, 2023 WL 4239073, at *5.

To begin, this Court has held repeatedly that deposit accounts like those established through the BDP are "an entirely distinct investment option" from money market mutual funds, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (Caproni, J.), including because these products differ in terms of risk, liquidity, and the manner

19

in which they invest free cash, *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 2918982, at *8 (S.D.N.Y. Apr. 12, 2023) (Caproni, J.) ("[T]he factors that determine the interest rate paid on MMFs and the factors banks must consider when setting interest rates to be paid on deposit accounts are different.  It is not surprising then, that at the end of the day, the resulting interest rates paid diverge.").  As a result, due to the material distinctions between deposit accounts and money market funds, this Court has held that "bank deposit accounts cannot be compared to Government MMFs when determining whether the former paid a reasonable interest rate." *Valelly*, 2023 WL 4239073, at *5.  Plaintiff's attempt to compare the BDP with money market funds is misplaced.[12]

Additionally, the Vanguard and Fidelity products cited in the Complaint are not typical brokerage accounts that are primarily used to trade securities, such as the ones Dr. Sherlip had with MSSB.  Instead, they have limited investment options, are primarily intended to hold cash savings and are therefore akin to high-yield savings accounts.  *See Vanguard Cash Plus Account*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited August 30, 2024) (cited at Compl. ¶ 59 n.7) (stating, in response to FAQ "[i]s this part of my settlement fund," that unlike "[t]he settlement fund in your Vanguard Brokerage Account," which "holds money for making trades" and "can be a good place for cash you're waiting to invest," the Cash Plus Account "is different" because "[i]t's designed as an alternative to your savings account—a place where you hold money you're intentionally saving"); *Fidelity Cash Management Account*, https://www.fidelity.com/spend-save/fidelity-cash-management-account/overview (last visited

---

[12] In any event, the cherry-picked rates identified in the Complaint purport to be from March and April 2024—nearly two years *after* Dr. Sherlip closed his MSSB accounts and six years after the statute of limitations expired—and therefore cannot support an inference that BDP rates were unreasonable while Dr. Sherlip was an MSSB customer or when a claim based on accounts that were opened in 2012 would have been timely.

August 30, 2024) (stating, in response to FAQ "[m]ay I open a Fidelity® Cash Management Account if I already have a Fidelity brokerage account," that "[t]he Fidelity® Cash Management Account is intended to complement, not replace, your existing brokerage account" and "lets you separate your spending activity from your investment activity").[13]  This is a stark difference from the ordinary retirement brokerage accounts at issue here, wherein the BDP sweeps cash for use in the brokerage account so that it does not remain completely idle while uninvested and where clients, if they are interested in pursuing higher yields, have myriad alternatives from which to choose.[14]

## IV.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

Even if they were not otherwise time-barred and waived, Plaintiff has failed to plead a breach of fiduciary duty under either Rule 9(b) or Rule 8.

### A.    Plaintiff Cannot Allege Any Breach of the Duty of Loyalty Because All Material Facts and Conflicts Relating to the BDP Were Disclosed

Plaintiff alleges that Defendants breached a duty of loyalty by:

(1) failing to make adequate disclosures to its customers; (2) failing to elevate its customers' interests above its own; (3) failing to avoid or—at the very least disclose—its conflicts of interest with its customers; (4) failing to disclose to

---

[13] The Court can take judicial notice of the Vanguard and Fidelity websites, the authenticity of which cannot reasonably be in dispute because Plaintiff references them in the Complaint.  *See, e.g.*, *Lowell v. Lyft*, 352 F. Supp. 3d 248, 263 n.5 (S.D.N.Y. 2018) ("Courts may take judicial notice of publically available websites when the authenticity is not in dispute."); *Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 418 n.2 (S.D.N.Y. 2021) (Caproni, J.) (taking judicial notice of publicly announced tweets in resolving motion to dismiss and noting that "courts may take judicial notice of information publicly announced on certain non-governmental websites"); *Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 80 n.1 (S.D.N.Y. 2020) (Caproni, J.) (considering online exhibition *in toto* because it was referred to in the complaint, critical to plaintiff's allegations and neither party contested its accuracy).

[14] Plaintiff also alleges that fees paid to brokers and advisors demonstrate that BDP rates are not reasonable (Compl. ¶¶ 63–65), but this is a red herring.  Advisory fees—which the BDP Disclosure Statement expressly disclosed include cash held in the BDP (Ex. D at 6)—are established based on the complete advisory relationship between a financial advisor and a customer.  Broker fees are transaction fees and not, as Plaintiff suggests, a form of "interest" payment.  (Compl. ¶ 63; *see, e.g.*, Ex. E (correspondence attaching, *inter alia*, SAC for account -819) at 9 ("When we provide brokerage services to you, we assist you with individual securities transactions and we are paid a commission on each transaction."); Ex. F (correspondence attaching, *inter alia*, SAC for account -656) at 7 (same).)  Neither of these fees are comparable to interest payments on cash sweep deposits, and neither has any bearing on whether the BDP rates constituted a breach of contract.

customers other viable options to customers that may benefit them; and (5) failing to demonstrate loyalty to its customers.

(*Id.* ¶ 67.)  Beyond these conclusory allegations, the Complaint nowhere describes the content of MSSB's disclosures.  Plaintiff's allegations fail in light of the robust disclosures MSSB actually made in the parties' contract, including the BDP Disclosure Statement.

The BDP Disclosure Statement disclosed the exact conflict of interest Plaintiff alleges was not disclosed: that MSSB or its affiliates controlled the interest rates offered through the BDP, and that their "ability to influence the rate on [customers'] Deposit Accounts presents a conflict of interest."  (Ex. D at 5.)  MSSB further disclosed that "[t]he fee paid to Morgan Stanley may be a substantial portion of the amount the Sweep Bank is paying on the Deposit Accounts" and that "[t]he amount of fee received by Morgan Stanley will affect the interest rate paid by the Sweep Bank on your Deposit Accounts."  (*Id.* at 6.)  And insofar as Plaintiff complains that Defendants earned a spread on the differential between the interest paid and the interest rate they were able to earn by lending or investing those funds, that precise fact was also clearly disclosed:

> Through the Program, each Sweep Bank will receive a stable, cost-effective source of funding. Each Sweep Bank intends to use deposits in the Deposit Accounts at the Sweep Bank to fund current and new businesses, including lending activities and investments. The profitability on such loans and investments is generally measured by the difference, or "spread," between the interest rate paid on the Deposit Accounts at the Sweep Bank and other costs of maintaining the Deposit Accounts, and the interest rate and other income earned by the Sweep Bank on those loans and investments made with the funds in the Deposit Accounts.

(*Id.* at 6–7); *see DeBlasio*, 2009 WL 2242605, at *24 (concluding, based on older version of MSSB's BDP Disclosure Statement with similar disclosures, that Morgan Stanley "explicitly explained the manner in which they would profit from the Cash Sweep Program[].").

These extensive disclosures (which are not acknowledged or addressed in the Complaint) not only flatly contradict Plaintiff's allegations of inadequate disclosures, they satisfied any duty Morgan Stanley had to make "full and fair disclosure." (*See* Compl. ¶¶ 31–32.) Accordingly, the duty of loyalty claim should be dismissed. *See, e.g.*, *Straily v. UBS Fin. Servs., Inc.*, 2009 WL 798830, at *6–8 (D. Colo. Mar. 24, 2009) (concluding, under New York law, and based on the same types of disclosures present here, that UBS satisfied any fiduciary duty to disclose conflicts of interest related to changes to its sweep program by providing "adequate notice of UBS's close ties to [the sweep bank], the likelihood that [plaintiff] would earn a relatively low interest rate under the new arrangement, and UBS's intent to earn more money for itself under the new scheme"); *Morton v. Aizenberg*, 2024 WL 1892435, at *4 (S.D.N.Y. Apr. 29, 2024) (dismissing breach of fiduciary duty claim alleging non-disclosure of risk where advisory contract between defendant financial advisor and plaintiff clients "informed [plaintiffs] as to the very risks about which [plaintiffs] . . . complain[ed]—namely, that their investment strategy would expose them to market volatility and, as a result, may lead to a total loss of investment"); *Wen v. N.Y. City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 549 (S.D.N.Y. 2023) (stating that a "breach of fiduciary duty claim may not be based on a conflict of interest or even self-dealing where the conflict was specifically disclosed") (subsequent history omitted).

### B.    Plaintiff Cannot Allege Any Breach of Fiduciary Duty Based on the Interest Rates Paid in the BDP Program

Plaintiff's claim that the interest rates paid in the BDP breached Defendants' fiduciary duties because the rates were too low fails as a matter of law, both with respect to Dr. Sherlip's brokerage accounts and his advisory accounts.

1.    Brokerage Accounts Do Not Implicate Fiduciary Duties Absent
Discretionary Trading Authority

With respect to Dr. Sherlip's brokerage accounts, New York law is clear that "[i]n the absence of discretionary trading authority delegated by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client." *Bissell v. Merrill Lynch & Co.*, 937 F. Supp. 237, 246 (S.D.N.Y. 1996).  Judge Sullivan has also held that fiduciary duties do not attach to cash sweep programs in non-discretionary brokerage accounts.  *See DeBlasio*, 2009 WL 2242605, at *27–29 ("[A]lthough the law recognizes a limited duty owed by brokers to holders of brokerage accounts, that duty was not breached through the actions that these Defendants are alleged to have taken in connection with the Cash Sweep Programs."); *c.f. Crigger v. Fahnestock & Co.,* 2003 WL 22170607, at *10 (S.D.N.Y. Sept. 18, 2003) ("Where the broker is not recommending investments to the client, but rather acting primarily as a banker, . . . a fiduciary duty is not created.").  Plaintiff alleges that "Morgan Stanley" was "designated as an Investment Advis[e]r" for only two of his accounts (Compl. ¶¶ 80–81), but makes no allegations that Dr. Sherlip received advice about putting or keeping money in the BDP in connection with his brokerage accounts (or his advisory accounts, for that matter).  As a threshold matter, therefore, Plaintiff cannot assert a breach of fiduciary duty claim with respect to his brokerage accounts.

Plaintiff attempts to avoid this conclusion by asserting that Defendants owed "non-managed accounts (including IRAs)" fiduciary duties under Reg. BI.  (*See* Compl. ¶¶ 26(c), 33-34, 107.)  That is wrong as a matter of law.  Reg. BI would not apply in the first place because the automatic sweeping of cash into the BDP does not represent an investment recommendation, but in any event, there is no private right of action under Reg. BI, which only authorizes enforcement by the SEC and the Financial Industry Regulatory Authority.  *See* Regulation Best Interest, 17 C.F.R. § 240.15l-1; *see also* Regulation Best Interest, 83 Fed. Reg.

21574, 21584 (proposed May 9, 2018) (codified at 17 C.F.R. pt. 240) ("[W]e do not believe proposed Regulation Best Interest would create any new private right of action . . . , nor do we intend such a result."); *Allen v. Fid. Brokerage Servs. LLC*, __ F. Supp. 3d ___, 2024 WL 135853, at *4 n.5 (S.D.N.Y. Jan. 12, 2024) (SEC's promulgation of Reg. BI "specifically disclaimed that it creates any new private right of action" (quotation marks omitted)).  Plaintiff cannot circumvent this by bootstrapping Reg. BI into a breach of fiduciary duty claim.  *See, e.g., Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 129 (S.D.N.Y. 2002) ("In the absence of . . . a private right of action, alleged breaches of regulatory rules do not form the basis for a fiduciary duty."), *aff'd sub nom Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006).

> ### 2.  As to Dr. Sherlip's Advisory Accounts, the BDP Rates Were Governed By Contract

While MSSB did owe Dr. Sherlip fiduciary duties with respect to the two accounts for which the Complaint alleges that it served as Investment Adviser, those duties do not extend to the rates set in the BDP, which were governed by contract.

As provided in the underlying contracts, and as alleged in the Complaint, the BDP was a feature of the contract between Dr. Sherlip and MSSB governing how uninvested cash would be handled as a *custodial* matter during those temporary periods before it was invested or used for client disbursements; it was not investment "advice" under the Investment Advisers Act, nor does the Complaint allege any such advice.  Namely, the contract provided that rather than sitting idle and without FDIC protection during these transition periods, uninvested cash would by default be swept into bank accounts where they would be FDIC-insured and able to earn at least some rate of interest.  (*See* Ex. B (correspondence attaching, *inter alia*, IRA Plan and Client Agreement) at 14; Ex. D (BDP Disclosure Statement) at 3; Ex. E (correspondence attaching, *inter alia*, SAC for account -819) at 18–19; Ex. F (correspondence attaching, *inter alia*, SAC for

account -656) at 17; Compl. ¶¶ 14–15, 19.)  The Complaint does not allege that Dr. Sherlip's

investment adviser made any recommendations with respect to how much money should be

placed or left in the BDP, and that is not the nature of the Complaint.  Instead, the Complaint

takes issue with the rates paid in the BDP, but that is governed by contract and is not a basis for a

fiduciary duty claim.

 Importantly, an "adviser and its client may shape [a fiduciary] relationship by agreement,

provided that there is full and fair disclosure and informed consent."  Commission Interpretation

Regarding Standard of Conduct for Investment Advisers, Investment Advisers Act Release No.

5248, 84 Fed. Reg. 33669, 33671 (July 12, 2019); *see also Morton*, 2024 WL 1892435, at *3

("Managers of discretionary investment accounts, such as Defendants here, 'owe their clients a

fiduciary duty,' but *only* insofar as that duty is 'embodied in their agreement with their clients, to

manage the account in a manner that comports with the client's investment objective.'" (citing

*Zorbas v. U.S. Tr. Co.*, 48 F. Supp. 3d 464, 488–89 (E.D.N.Y. 2014))); *BNY Cap. Mkts., Inc. v.*

*Moltech Corp,* 2001 WL 262675, at *8 (S.D.N.Y. Mar. 14, 2001) (finding that a fiduciary

relationship is "necessarily circumscribed" such that "[a] fiduciary is only responsible to

undertake reasonable diligence or give advice for the benefit of another upon matters *within the*

*scope of the relation*") (quotation marks omitted)).

 Here, Dr. Sherlip's contract with MSSB expressly provides that uninvested cash would

automatically be swept pursuant to those contractual terms, rather than through the exercise of

discretion by financial advisers.  Again, Plaintiff makes no allegation of any *advice* given by

MSSB to Dr. Sherlip concerning how much money to keep in BDP and for how long, but

complains that the interest rates paid in the BDP were too low.  Those interest rates were

governed by the parties' contract and therefore do not support a breach of fiduciary duty claim as

a matter of law.  *See Pane v. Citibank, N.A.*, 19 A.D.3d at 279 (finding no breach of fiduciary duty where defendant acted in accordance with "a formal written agreement covering the precise subject matter of the alleged fiduciary duty"); *Daniel v. Aizenberg*, 2023 WL 2541888, at *3 (S.D.N.Y. Mar. 16, 2023) ("Because Defendants followed Plaintiffs' chosen investment objectives, in accordance with the terms of the Contract, this Court cannot find Defendants breached their fiduciary duty to Plaintiffs.").

*Straily v. UBS*, a case addressing the same type of sweep program at issue here, is instructive.  In *Straily*, the plaintiff alleged, *inter alia*, that UBS "violated its fiduciary duties to [plaintiff] when it directed non-invested funds in [plaintiff's] account to be deposited in accounts with UBS's affiliate . . . where the funds earned below-market interest, rather than directing such funds to accounts that earned market-rate interest." 2009 WL 798830, at *3.  Applying New York law, the court explained that while UBS, as a broker and agent of the plaintiff, "owed fiduciary duties to [plaintiff]," those duties were limited to the exercise of discretion.  *Id.* at *3–4. Because UBS's obligations with respect to the sweep accounts was governed by contract, not subject to discretion, plaintiff could not allege a breach of fiduciary duty claim:

> Under the terms of Straily's contracts with UBS, the handling of uninvested funds is not entrusted to UBS's discretion.  Rather, the handling of such funds is addressed specifically in and controlled by the terms of the contracts between Straily and UBS.  In this circumstance, UBS does not owe Straily a fiduciary duty concerning this specific issue, the handling of uninvested funds, because UBS had no discretion concerning the handling of uninvested funds.  Rather, UBS was required to abide by the terms of its contracts with Straily.  UBS cannot be said to have breached its fiduciary duty to Straily when UBS complied with the contractual terms to which Straily had agreed.

*Id.* at *4.

This Court should reach the same result here, where the rates paid in the BDP—which is what the Complaint challenges—were a creature of contract, and where Plaintiff does not allege

27

any investment advice that was given with respect to keeping money in the BDP.  *See DeBlasio*, 2009 WL 2242605, at *17 (in case involving cash sweep program for brokerage accounts of Morgan Stanley and other banks, dismissing claim under the Investment Advisers Act ("IAA") relating to changes to the sweep as described in new disclosure documents, because "the disclosure documents . . . amended the terms of the features described in Plaintiffs' account agreements.  These disclosure documents did not provide investment advice that brought the agreements within the purview of the IAA.  In fact, Defendants warned Plaintiffs that they should do their own research and seek additional advice if necessary" (citation omitted)).

> C.    **Plaintiff's Breach of Fiduciary Duty Claim on Behalf of the IRA Subclass Should be Dismissed as Duplicative of Its Breach of Contract Claim**

Insofar as Plaintiff's breach of fiduciary duty claim is based on Plaintiff's allegation that the BDP rates were too low, this fails as to the IRA Subclass for the additional reason that it is duplicative of Plaintiff's breach of contract claim.

"Under New York law, '[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.'"  *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 679 (S.D.N.Y. 2022).  "Breach of fiduciary duty and breach of contract claims are duplicative where they are premised upon the same facts and seek the same damages for the alleged conduct."  *Id.* (quotation marks omitted).

Here, the premise of Plaintiff's claim that Defendants breached their fiduciary duties to Dr. Sherlip by failing to pay reasonable rates of interest is the same as Plaintiff's breach of contract claim.  (*See, e.g.*, Compl. ¶ 66 (alleging that "Morgan Stanley breaches its fiduciary duties *and* its contracts with its customers *and* violates Reg. BI" by failing to provide reasonable rates for customer cash (emphasis added)); *compare* Compl. ¶ 102 ("As set forth herein, Morgan Stanley failed to pay 'a reasonable rate of interest' on [BDP] deposits; therefore, Morgan Stanley

28

breached the contracts.") *with id.* ¶ 109 ("Morgan Stanley violated each of the foregoing
[fiduciary] duties when it . . . failed to pay the Class a reasonable rate of interest")).
Accordingly, Plaintiff's breach of fiduciary duty claim should be dismissed as to the IRA
Subclass because it is duplicative of the breach of contract claim. *See Brooks v. Key Tr. Co.
Nat'l Ass'n*, 809 N.Y.S.2d 270, 272–73 (3rd Dep't 2006) (affirming dismissal of breach of
fiduciary claim against financial advisor as duplicative where it was "based upon the same facts
and theories as his breach of contract claim").

V.    **PLAINTIFF CANNOT ALLEGE LEGALLY COMPENSABLE DAMAGES AS TO ITS BREACH OF
      CONTRACT OR BREACH OF FIDUCIARY DUTY CLAIMS**

       Both Plaintiff's contract and fiduciary duty claims fail for the additional, independent
reason that Plaintiff cannot allege that MSSB caused it to suffer legally cognizable losses.

       As the contracts explicitly stated, Dr. Sherlip was permitted to terminate his participation
in the BDP at any time and/or direct his financial advisor to block deposits to BDP sweep banks.
*See, e.g.*, Ex. D (BDP Disclosure Statement) at 4, 8.  Moreover, at all times, Dr. Sherlip had the
option to invest (or instruct his financial advisor to invest) his uninvested cash so that it would
not be swept to BDP deposit accounts.  *See DeBlasio*, 2009 WL 2242605, at *31 (in analyzing
breach of fiduciary duty claim arising from cash sweep programs, commenting that "[b]y
definition, free credit balances existed in Plaintiffs' brokerage accounts because Plaintiffs chose
not to invest these funds and instead left them idle in their accounts").

       Plaintiff has not and could not allege that Dr. Sherlip was forced to allocate cash to the
BDP.  Nor has Plaintiff alleged that MSSB—or indeed, any Defendant—advised Dr. Sherlip not
to invest funds that were swept into the BDP.  *See Welch v. TD Ameritrade Holding Corp.*, 2009
WL 2356131, at *7 (S.D.N.Y. July 27, 2009) ("[T]here is no allegation in the Complaint
suggesting that . . . TD Ameritrade's customers were in any way precluded from . . . using their

free credit balances to purchase mutual funds, stocks, or other investments that would be riskier but potentially more profitable.").  Additionally, to the extent higher interest payments were more important than FDIC insurance, maximum liquidity, and minimal risk, Dr. Sherlip assumed responsibility for "compar[ing] the terms, interest rates, required minimum amounts and other features of the Deposit Accounts with other deposit accounts and alternative cash investments." (Ex. D (BDP Disclosure Statement) at 5.)  Because BDP participation, including by Dr. Sherlip, is the product of affirmative investor choice, any "losses" Plaintiff allegedly experienced are not attributed to Defendants or legally compensable.  *See, e.g.*, *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004) ("Because a plaintiff may recover only for damages that are directly and proximately caused by a defendant's breach of contract, causation is an element—and a crucial one—of the plaintiff's prima facie case.") (quotation marks and brackets omitted)); *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 465 (2d Cir. 1999) (for breach of fiduciary duty claims, "[i]n the absence of a causal link between [the defendant's] alleged wrongful conduct and [the] plaintiff's allege damages, the complaint must be dismissed") (brackets omitted)); *Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 138 A.D.3d 570, 570 (1st Dep't 2016) (affirming lower court's dismissal of plaintiff's breach of contract claim where complaint failed to allege how purported breach caused any harm to plaintiff).

Plaintiff's conclusory assertion that "Morgan Stanley's conduct damaged Plaintiff and the IRA Subclass" (Compl. ¶ 103) is baseless as a matter of law.  *See Gawrych v. Astoria Fed. Sav. & Loan*, 148 A.D.3d 681, 684 (2d Dep't 2017) (holding trial court should have dismissed breach of contract claim "since the complaint only contains conclusory allegations of damages resulting from the alleged breaches"); *Rahl v. Bande*, 328 B.R. 387, 418 (S.D.N.Y. 2005) (finding

conclusory allegation that "[a]s a proximate result of the [defendants'] . . . breaches of their fiduciary duties, [plaintiff] has been damaged in an amount to be proven at trial" to be "clearly insufficient to support a claim for damages" (brackets and ellipses omitted)).

## VI. PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

### A. Dr. Sherlip's Binding Agreement with MSSB Precludes an Unjust Enrichment Claim

An unjust enrichment claim cannot be sustained where the subject matter of the unjust enrichment claim is covered by a valid contract on the same subject matter. *See, e.g.*, *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (citing *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)); *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092, at *10 (S.D.N.Y. Aug. 17, 2021) (Caproni, J.) ("[A] plaintiff may not recover on an unjust enrichment claim where it can instead bring a claim for breach of contract encompassing the same subject matter.").

Plaintiff's unjust enrichment claim arises out of the binding contract Dr. Sherlip entered into with MSSB when he opened his accounts.  The alleged subject matter of Plaintiff's unjust enrichment claim is precisely the same subject matter covered by the contract on which Plaintiff's breach of contract claim is based.  (*Compare* Compl. at ¶ 113 ("Plaintiff and the Class received lower interest payments on their cash and other deposits than they would have in a reasonable and fair market"), *with id.* at ¶ 102 ("Morgan Stanley failed to pay a 'reasonable rate of interest' on those deposits; therefore Morgan Stanley breached the contracts").)  Moreover, the contract governing Dr. Sherlip's relationship with MSSB addresses the interest rates to be provided under the BDP and how those rates are to be set.  Where, as here, the validity of the applicable contract is not in dispute, and the subject matter of the unjust enrichment claim is covered by that contract, the claim must be dismissed.  *See, e.g.*, *Beth Isr. Med. Ctr.*, 448 F.3d at

586; *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014).

### B.    Plaintiff Fails to State a Claim for Unjust Enrichment

In any event, Plaintiff does not and cannot plead the elements of an unjust enrichment claim. To plead a claim for unjust enrichment, Plaintiff must allege: "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr.*, 448 F.3d at 586 (quotations marks omitted).

In support of its unjust enrichment claim, Plaintiff alleges that Morgan Stanley has significant financial interest in not paying "a reasonable interest rate and keeping as much of the 'spread' as it can" and not disclosing the interest rates paid "lest the consumers pursue accounts with more lucrative rates at other institutions." (Compl. at ¶ 77; *see id.* ¶¶ 68–76.) Plaintiff asserts that this conduct "unjustly enriches Morgan Stanley at the expense of its customers." (*Id.* ¶ 68; *see id.* ¶ 84.) But, as explained in *DeBlasio*, "more of a nexus is required between a defendant's 'enrichment' and plaintiff's 'expense' to plead a plausible claim for relief on a theory of unjust enrichment." 2009 WL 2242605, at *40 (considering sweep account claim based on correlation between reduced rate of interest allegedly received by customers and defendants' increased profits); *see Welch*, 2009 WL 2356131 at *11 (same). As in *DeBlasio*, Plaintiff does not allege any "losses, in real terms, to the value of the principal amount of [Dr. Sherlip's] free credit balances" or that Morgan Stanley "induced" Dr. Sherlip to use the BDP or delayed or refused to return those funds. *See DeBlasio*, 2009 WL 2242605, at *40. To the contrary, all BDP participants received compensation for using the BDP in the form of interest. In short, the Complaint does not plead Morgan Stanley was enriched at Plaintiff's expense.

Moreover, the Complaint does not support an inference that "equity and good conscience" require any Defendant to disgorge profits earned from funds in the BDP. Customers were informed exactly how MSSB and affiliated sweep banks would profit from the BDP. MSSB would receive a fee that "may be a substantial portion of the amount the Sweep Bank is paying on the Deposit Accounts" (Ex. D (BDP Disclosure Statement) at 6), and Sweep Banks would "use deposits in the Deposit Accounts . . . to fund current and new business, including lending activities and investments." (*Id.*) Customers were also informed that the profitability of that activity would be "the difference, or 'spread,' between the interest rate paid on the Deposit Accounts at the Sweep Bank and other costs of maintaining the Deposit Accounts, and the interest rate and other income earned by the Sweep Bank on those loans and investments made with the funds in the Deposit Accounts." (*Id.* at 6–7.) Moreover, as Judge Sullivan observed in *DeBlasio*, "the practice of a financial institution using money deposited with it to obtain earnings is *neither unknown nor unexpected, much less nefarious*." *DeBlasio*, 2009 WL 2242605, at *40 (quoting *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 703 (2d Cir. 1998)). Acting consistently with the parties' contract, based on disclosures of the very facts of which Plaintiff complains, does not support a claim for unjust enrichment. *See DeBlasio*, 2009 WL 2242605, at *40 (dismissing unjust enrichment claim where defendants' use of cash sweep program was not deceptive); *Welch*, 2009 WL 2356131 at *11 (same).

## VII. IF ANY CLAIMS SURVIVE, MORGAN STANLEY AND MORGAN STANLEY & CO. LLC SHOULD BE DISMISSED BECAUSE THEY HAD NO RELATIONSHIP WITH DR. SHERLIP

All claims against Morgan Stanley and Morgan Stanley & Co. LLC should be dismissed. Morgan Stanley is a financial holding company that provides global financial services through subsidiaries and affiliates, including MSSB.[15] Morgan Stanley & Co. LLC is a broker-dealer

---

[15] *See, e.g.*, Ex. J (Morgan Stanley Annual Report Form 10-K (Dec. 2023)) at 5. The Court may consider "legally

subsidiary of Morgan Stanley separate from MSSB.[16]  The Complaint does not allege any

relationship of any kind between Dr. Sherlip and these entities.

     *First*, the contract-based claims against these Defendants fail for the basic reason that

Plaintiff has not pleaded a single allegation that establishes privity of contract between either of

them and Dr. Sherlip.  (*Compare* Compl. ¶ 4 (alleging MSSB has "relationship[s] with its

customers"), *with id.* ¶¶ 2–3 (absence of any allegation of specific customer relationships with

Morgan Stanley and Morgan Stanley & Co. LLC).)

     *Second*, the breach of fiduciary duty claim against these Defendants fails for the same

basic reason: the Complaint contains no facts suggesting that either Morgan Stanley or Morgan

Stanley & Co. LLC had a relationship with Dr. Sherlip, much less one of a fiduciary nature.  *See*

*DeBlasio*, 2009 WL 2242605, at *28 (dismissing claim against corporate affiliates who had no

role in cash sweep program); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331,

353 (E.D.N.Y. 2014) (dismissing breach of fiduciary duty claim against third party to contract

because plaintiffs "cite[d] no authority . . . that a non-signatory . . . to a contract may be liable for

breach of a fiduciary duty arising out of that contract").

     *Third*, the unjust enrichment claim against these Defendants fails because the Complaint

makes no allegation that either Defendant was enriched at Dr. Sherlip's expense, nor alleges any

facts that suggest equity requires restitution.  Additionally, "there can be no quasi-contract claim

against a third-party non-signatory to a contract that covers the subject matter of the claim."

*Randall's Is. Aquatic Leisure, LLC v. City of N.Y.*, 92 A.D.3d 463, 464 (1st Dep't 2012); *Mueller*

*v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201, 207–08 (S.D.N.Y. 2016) (same).

---

required public disclosure documents filed with the SEC" in analyzing a motion to dismiss.  *See ATSI Commc'ns.*, 493 F.3d at 98.

[16] *See* Ex. J at 9.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should dismiss the Complaint with prejudice.

Dated:  New York, New York                  Respectfully submitted,
        August 30, 2024

                                            **DAVIS POLK & WARDWELL LLP**


                                            By:  _/s/ Brian S. Weinstein_____

                                                 Brian S. Weinstein
                                                 Deborah S. Mazer
                                                 450 Lexington Avenue
                                                 New York, New York 10017
                                                 (212) 450-4000
                                                 brian.weinstein@davispolk.com
                                                 deborah.mazer@davispolk.com

                                                 Jonathan K. Chang
                                                 1600 El Camino Real
                                                 Menlo Park, CA 94025
                                                 (650) 752-2000
                                                 jonathan.chang@davispolk.com

                                                 Danielle Mullery
                                                 901 15th St NW
                                                 Washington, DC 20005
                                                 (202) 962-7000
                                                 danielle.mullery@davispolk.com

                                                 *Counsel for Defendants Morgan Stanley,*
                                                 *Morgan Stanley & Co. LLC, and Morgan*
                                                 *Stanley Smith Barney LLC*