UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ESTATE OF BERNARD J. SHERLIP, THE           :
BARRETT LIVING TRUST, and SAFRON            :
CAPITAL CORP., *on behalf of themselves and all* :
*others similarly situated*,                          :
                                                               :
                                        Plaintiff,      :
                                                               :
                    -against-                            :
                                                               :
MORGAN STANLEY and MORGAN STANLEY :
SMITH BARNEY LLC,                              :
                                                               :
                                                               :
                                        Defendants.   :
-------------------------------------------------------------X

24-CV-4571 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs, on behalf of themselves and a putative class, allege that Defendants Morgan

Stanley and Morgan Stanley Smith Barney LLC (collectively, "Morgan Stanley") paid

unreasonably low rates of interest on clients' so-called "cash sweep" accounts.  Robbins Geller

Rudman & Dowd LLP ("Robbins Geller"), the law firm representing Plaintiff Safron Capital

Corp., moved for appointment as interim class counsel.  *See* Robbins Geller Mot. & Mem., Dkt.

67.  Bernstein Litowitz Berger & Grossmann LLP, Berger Montague PC, and Williams Dirks

Dameron LLC (collectively, the "Sherlip-Barrett Group"), the law firms representing Plaintiffs

Estate of Bernard J. Sherlip and the Barrett Living Trust, cross-moved.  Sherlip-Barrett Group

Mot., Dkt. 68.  Robbins Geller's motion is DENIED, and the Sherlip-Barrett Group's motion is

GRANTED.  The Sherlip-Barrett Group will serve as interim class counsel.

## BACKGROUND

Defendants Morgan Stanley and Morgan Stanley Smith Barney LLC (collectively,

"Morgan Stanley") are broker-dealers that provide financial management services.  Am. Compl.,

Dkt. 40, ¶ 20.  Those service include the Bank Deposit Program, a so-called "cash sweep"

program pursuant to which clients' uninvested cash balances are automatically transferred into

interest-bearing accounts at banks that are affiliated with Morgan Stanley.  *Id.* ¶¶ 22–24.

Plaintiffs allege that Morgan Stanley has breached its contracts, fiduciary duties, and implied

covenants with clients by paying unreasonably low interest rates on funds held in bank cash

sweep accounts.  *Id.* ¶¶ 1–9.

A putative class action, this case was originally filed by the Estate of Bernard J. Sherlip

on behalf of itself and all others similarly situated.  Compl., Dkt. 1, at 1.  Several months later, an

Amended Complaint was filed, which named both the Estate and a new party, the Barrett Living

Trust, as Plaintiffs.  Am. Compl. ¶¶ 10–11.  Plaintiffs are represented by the Sherlip-Barrett

Group.[1]  *Id.* at 44–45.  Attorneys that are part of that Group have been appointed interim class

counsel in five other putative class actions challenging other brokerages' cash sweep practices:

*Mehlman v. Ameriprise Financial, Inc*., No. 24-CV-3018 (D. Minn.); *Goldsmith v. UBS*

*Financial Services, Inc*., No. 24-CV-6354 (S.D.N.Y.); *In re LPL Financial Cash Sweep Litig.*,

No. 24-CV-1228 (S.D. Cal.); *In re Charles Schwab Corp. Cash Sweep Litig.*, No. 24-CV-7344

(C.D. Cal.); and *Schmidlin v. Raymond James Financial, Inc.*, No. 24-CV-2041 (M.D. Fla.).

Rizio-Hamilton Decl., Dkt. 70, ¶ 10.

The day after Plaintiffs filed the Amended Complaint in this action, Safron Capital Corp.

filed a separate action, which named the same Defendants and made substantially similar

allegations.  *See Safron Capital Corp v. Morgan Stanley et al.*, 24-CV-7750 (S.D.N.Y.)

("*Safron*"), Compl., Dkt. 1.  Safron is represented by Robbins Geller.  Like the Sherlip-Barrett

---

[1]        Attorneys from the law firms Simmons Hanly Conroy LLP, Oakes & Fosher, LLC, Buzin Law, P.C., and Rosca Scarlato LLC have also appeared on behalf of Plaintiffs in this case.  *See* Compl. at 44–46.  Those firms, however, have not moved for appointment as interim class counsel.

Group, Robbins Geller has initiated several other actions challenging different financial institutions' cash sweep programs, including: *Brickman Invs. Inc. v. Wells Fargo & Co.*, No. 24-CV-07751 (S.D.N.Y.); *Safron Capital Corp. v. Bank of Am. Corp.*, No. 24-CV-07743 (S.D.N.Y.); *Christner v. Wells Fargo & Co.*, No. 24-CV-08953 (S.D.N.Y.); and *Abbas v. JPMorgan Chase & Co.*, No. 24-CV-09516 (S.D.N.Y.).  Robbins Geller Mot. & Mem. at 8 & n.2.

After *Safron* was filed, Morgan Stanley, the *Sherlip* plaintiff (represented by the Sherlip-Barrett Group) and the *Safron* plaintiff (represented by Robbins Geller) moved jointly to consolidate the two cases.  *See* November 21, 2024, Letter, Dkt. 48.  The night before that motion was filed, Robbins Geller initiated a third action against Morgan Stanley, *McKinney v. Morgan Stanley et al.*, 24-CV-8860 (S.D.N.Y.) ("*McKinney*").  *McKinney* challenges the Bank Deposit Program administered by E*TRADE, a Morgan Stanley subsidiary.  *McKinney*, Compl., Dkt. 1, ¶¶ 1–4, 13–14.  In the motion to consolidate *Sherlip* and *Safron*, the *Safron* plaintiff argued in a footnote that *McKinney* should also be consolidated.  November 21, 2024, Letter at 3 n.2.  Defendants and the *Sherlip* plaintiffs took no position on whether to consolidate *McKinney*, noting that they "ha[d] not had time to consider" the allegations contained in the less-than-twenty-four-hour-old *McKinney* complaint.  *Id.* at 2 n.1.

The Court ordered the parties to file another letter informing the Court of their position whether *McKinney* should be consolidated with *Sherlip* and *Safron*.  November 22, 2024, Order, Dkt. 49.  In response, the *Safron* plaintiff reiterated its view that consolidation was appropriate, but Defendants and the *Sherlip* plaintiffs disagreed.  Defendants reasoned that because the allegations in *McKinney* also address E*TRADE's Bank Deposit Program, rather than just Morgan Stanley's, the allegations — many of which involve conduct that occurred before E*TRADE became a Morgan Stanley subsidiary — were too attenuated from those in *Sherlip*

and *Safron*.  November 27, 2024, Letter, Dkt. 54, at 3–5.  The *Sherlip* plaintiffs agreed, and

further argued that *McKinney* is substantially similar to an earlier-filed putative class action

pending in the District of New Jersey, *Burmin et al. v. E\*TRADE Securities LLC et al.*, 24-CV-

603 (D.N.J.) ("*Burmin*"), in which discovery had begun and a motion to dismiss was pending.

November 27, 2024, Letter at 5.

    The Court granted the motion to consolidate *Sherlip* and *Safron* but declined to

consolidate *McKinney*.[2]  December 9, 2024, Order, Dkt. 57, at 2.  The Court also set a deadline

for counsel for the various plaintiffs to move for appointment as interim class counsel.  *Id.*  Both

Robbins Geller and the Sherlip-Barrett Group sought appointment.  *See* Robbins Geller Mot. &

Mem.; Sherlip-Barrett Group Mot.

**DISCUSSION**

## I.    Legal Standard

    In a putative class action, the Court "may designate interim counsel to act on behalf of a

punitive class before determining whether to certify the action as a class action."  Fed. R. Civ. P.

23(g)(3).  Courts often appoint interim class counsel in cases like this one, in which there are

"overlapping, duplicative, or competing suits pending in other courts, and some or all of those

suits may be consolidated, with multiple attorneys vying for class counsel appointment."  *Mogull*

*v. Pete & Gerry's Organics, LLC*, No. 21-CV-3521, 2022 WL 4661454, at *1 (S.D.N.Y. Sept.

30, 2022) (quoting *Sullivan v. Barclays PLC*, No. 13-CV-2811, 2013 WL 2933480, at *1

(S.D.N.Y. June 11, 2013)).  In such cases, interim class counsel "may be helpful in clarifying

responsibility for protecting the interests of the class during precertification activities, such as

making and responding to motions, conducting any necessary discovery, moving for class

---

[2]    *McKinney* was assigned to the Undersigned on the ground that it is related to this case.  A motion to
transfer that action to the District of New Jersey is pending.  *See McKinney*, Mot. to Intervene and Transfer, Dkt. 47.

certification, and negotiating settlement." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271–72 (S.D.N.Y. 2009) (cleaned up).

"When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A) of the Federal Rules of Civil Procedure." *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016). Accordingly, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)). The Court "may also consider 'any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *In re Bank of Am. Corp.*, 258 F.R.D. at 272 (quoting Fed. R. Civ. P. 23(g)(1)(B)).

## II. The Rule 23(g) Factors Counsel in Favor of Appointing the Barrett-Sherlip Group

### A. The Barrett-Sherlip Group Has Performed Superior Work in Identifying and Investigating Potential Claims

The first factor that the Court must consider is "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P 23(g)(1)(A)(i). Both movants report that they have done substantial work in connection with the claims in this case, but the Sherlip-Barrett Group's efforts have been more comprehensive. For example, Robbins Geller notes generally that it has "examined the structure and characteristics" of Morgan Stanley's sweep program and "researched the industry practices, relationships, and agreements at issue here." Robbins Geller Mot. & Mem. at 4. The Sherlip-Barrett Group's representations are more specific; it notes that its attorneys have interviewed nine former employees of Morgan Stanley

about its cash sweep program and have consulted with former SEC officials about the relevant

issues in this action.  Sherlip-Barrett Group Mem., Dkt. 69, at 7–9.

      The materials the two groups have filed in this litigation so far suggest that the Sherlip-

Barrett Group's work has been more rigorous.  For example, the *Safron* complaint, filed by

Robbins Geller, supports the claim that Morgan Stanley's interest rates are uncommonly low by

citing the higher interest rates of three of its competitors.  *See Safron*, Compl. ¶ 20.  By contrast,

the Amended Complaint filed by the Sherlip-Barrett Group in this action references an index of

300 competitors' interest rates and analyzes specific data to underscore its argument that Morgan

Stanley's rates are unreasonably low.  *See* Am. Compl. ¶¶ 97–107.  The Sherlip-Barrett Group's

extensive analysis into this issue is highly valuable, given how critical industry-wide

comparisons have proven to be in other cash sweep cases.  *See, e.g.*, *Valelly v. Merrill Lynch*,

2023 WL 2918982, at *8–9 (S.D.N.Y. Apr. 12, 2023); *Valelly v. Merrill Lynch, Pierce, Fenner

& Smith Inc.*, 464 F. Supp. 3d 634, 644–45 (S.D.N.Y. 2020).

      The specific efforts Robbins Geller cites as evidence of the work it has undertaken to

identify and investigate potential claims raise more concerns than they resolve.  The central piece

of evidence that Robbins Geller cites to show its diligence in pursuing these claims is that it has

"invested considerable time and resources into centralizing [this action] and other related cash

sweep cases pending across the country into one forum under 28 U.S.C. § 1407."  Robbins

Geller Mot. & Mem. at 4.  Since Robbins Geller moved for appointment as interim class counsel,

however, the Judicial Panel on Multidistrict Litigation ("JPML") has denied Robbins Geller's

quixotic motion to transfer the various cash sweep actions filed across the country into an MDL.

*See In re Cash Sweep Programs Cont. Litig.*, 766 F. Supp. 3d 1346, 1348 (U.S. Jud. Pan. Mult.

Lit. 2025).  The JPML noted that the different actions that Robbins Geller sought to centralize

shared only a "superficial commonality," as they involved "different cash sweep programs,

subject to different contractual terms, different interest rates and fees, different types of financial instruments, different types of customers (*e.g.*, retail investors versus retirement accounts), and different disclosures to those customers." *Id.* at 1349.  The JPML's decision was unsurprising, given that every defendant and plaintiffs in 21 of the 27 purportedly related actions opposed the motion to centralize.  *Id.* at 1348.  Far from maximizing efficiency, Robbins Geller's efforts before the JPML led only to further delay.

Accordingly, the Court concludes that the efforts the Barrett-Sherlip Group has made to pursue the claims appear more extensive, more relevant, and more beneficial to class members than those of Robbins Geller.

### B.    The Barrett-Sherlip Group and Robbins Geller Both Have Sufficient Experience, Knowledge of the Applicable Law, and Resources to Litigate the Case

The remaining enumerated Rule 23(g) factors concern counsel's readiness to litigate — specifically, their "experience in handling class actions, other complex litigation, and the types of claims asserted in the action," their "knowledge of the applicable law," and "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iv).  On these factors, the Court is not persuaded that Robbins Geller and the Sherlip-Barrett Group are meaningfully different.  Robbins Geller is a major plaintiff-side law firm with extensive experience litigating high-value class actions in this District and across the country.  *See* Robbins Geller Mot. & Mem. at 5–7 (compiling cases litigated successfully by Robbins Geller).  The three firms that comprise the Sherlip-Barrett Group have similarly substantial experience.  *See* Sherlip-Barrett Mem. at 9–14 (compiling cases litigated successfully by members of the Sherlip-Barrett Group).  Both movants are well-funded, have over 200 attorneys on staff, and have committed to devoting significant resources toward this action.  *See* Robbins Geller Mot. &

Mem. at 8–9; Sherlip-Barrett 14–18.  Put simply, Robbins Geller and the Sherlip-Barrett Group are both qualified to represent the putative class.

The parties' efforts to distinguish themselves from one another with respect to these Rule 23(g) factors fall short.  For example, although Robbins Geller and the Sherlip-Barrett Group have both litigated cash sweep cases against other financial institutions, the Sherlip-Barrett Group emphasizes in its submission that it has been appointed interim class counsel in five such cases.  According to the Group, such appointments "reflect[] the trust that other courts overseeing similar claims have rightfully placed" in the Group.  Sherlip-Barrett Opp., Dkt. 74, at 11.  Notably, however, four of those motions for appointment were unopposed, *see* Rizio-Hamilton Decl. Exs. F, H–K, Dkts. 70-6, 70-8–11, and one was opposed solely on the ground that the Group consists of multiple law firms instead of just one (an argument the Court addresses below), *see* Rizio-Hamilton Decl. Ex. G, Dkt. 70-7, at 2.  The decisions in those cases, therefore, provide little insight into how the Sherlip-Barrett Group's qualifications compare to those of other major plaintiff-side litigators.

For its part, Robbins Geller claims that the Sherlip-Barrett Group has demonstrated inferior knowledge with the applicable law by failing to bring claims pursuant to the Investment Advisers Act, the Racketeer Influenced and Corrupt Organizations Act, New York General Business Law § 349, and various common law negligence causes of action.  Robbins Geller Opp., Dkt. 76, at 6.  The mere fact that Robbins Geller has chosen to pursue *more* claims than the Sherlip-Barrett Group is not, in itself, evidence of superior aptitude, particularly because the Sherlip-Barrett Group has provided sensible explanations for why they believe those claims are unlikely to succeed.  Sherlip-Barrett Mem. at 21–22 & nn. 5–7.  Although the Court expresses no view, at this pre-motion to dismiss stage, about which side is correct on the law, the Sherlip-Barrett Group has clearly demonstrated that their decision not to plead certain claims was the

result of professional judgment.  Inasmuch as Robbins Geller has failed to provide evidence that any of the additional claims it has brought in this action have actually succeeded in other cash sweep cases, the Court is wary to attach any importance to the firm's decision to pursue such a broad litigation strategy.

In short, both Robbins Geller and the Sherlip-Barrett Group have the experience, knowledge, and resources needed to litigate this case, and the Court is skeptical that any of the differences the proposed appointees have drawn on these factors are significant.

### C.    Additional Factors Weigh in Favor of Appointing the Barrett-Sherlip Group

In addition to the factors enumerated in Rule 23(g), the Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Robbins Geller raises several arguments that fall into this catchall category, all of which are either neutral or counsel in favor of appointing the Barrett-Sherlip Group.

First, Robbins Geller argues that because the Barrett-Sherlip Group consists of three law firms, its "bloated structure" will "likely cause duplicative, inefficient, and costly efforts." Robbins Geller Opp. at 2, 6–7 (citing *In re Nelnet Servicing, LLC*, No. 4:22-CV-3181, 2023 WL 1108253, at *7 (D. Neb. Jan. 30, 2023)).  This argument is entirely conclusory.  Co-counsel relationships between and among two, three, or more law firms are common, and Robbins Geller presents no evidence that such arrangements are inherently more problematic than any professional relationship between lawyers.  To the extent Robbins Geller's concerns may be legitimate, the joint declaration submitted by the Barrett-Sherlip Group quells them by outlining cases in which the firms have successfully co-counseled and the protocols they have developed

to ensure efficient and cost-effective collaboration.[3]  *See* Rizio-Hamilton Decl. ¶¶ 5, 9; *see also*

*Goldsmith v. UBS Fin. Servs. Inc*., No. 24-CV-6354, 2024 WL 4665841, at *1 (S.D.N.Y. Nov. 1,

2024) (appointing the Barrett-Sherlip Group as interim class counsel in another cash sweep case

and finding that the firms "persuasively argue[d] that the pooling of expertise will in fact achieve

efficiencies").

Second, Robbins Geller argues that because its client, Safron Capital Corp., is an

institutional investor with more resources and larger losses than average investors, "it can

commit to a long-term litigation strategy, thereby prioritizing a favorable outcome for the Class

instead of a short-term resolution that may yield a lower recovery."  Robbins Geller Mot. &

Mem. at 10–11.  This argument is entirely speculative, as Robbins Geller has not produced any

actual evidence about the various plaintiffs' comparative losses.  Indeed, despite Robbins Geller

touting Safron's "size and sophistication," *id*. at 11, it appears to be owned by a single

shareholder, Rina Rollhaus.  *See United Food & Com. Workers Union v. Chesapeake Energy*

*Corp*., 281 F.R.D. 641, 653 (W.D. Okla. 2012) (identifying Ms. Rollhaus as Safron's "owner and

sole shareholder").  Ms. Rollhaus's history is concerning to say the least; in 1994, she settled a

dispute with the SEC alleging that she was involved in a "free-riding" scheme pursuant to which

she allegedly placed purchase orders for securities with the intention of paying for them using

the proceeds from their sale.  *See SEC v. Fireman et al.*, Litigation Release No. 14188, 1994

SEC LEXIS 2407 (Aug. 9, 1994).  Although the sparse information available about Safron and

accusations of misconduct against its owner do not, in themselves, preclude it from serving as an

adequate representative of the putative class's interests, these concerns outweigh any of the

---

[3]      Further, this Court will examine for inefficiencies and duplicative work if and when Plaintiffs prevail and
seek an award of attorneys' fees.  Any requested fee will be adjusted if the fee application shows that the attorneys
have been inefficient or duplicated work.

vague benefits Robbins Geller argues would be conferred by Safron's purported size and sophistication.

Finally, Robbins Geller argues that it is uniquely positioned to maximize efficiency because it already represents the plaintiffs in both *Safron* and *McKinney*. Robbins Geller's actual conduct in litigating those cases does not suggest that efficiency is its priority. Indeed, *Safron* and *McKinney* were filed only *after* other law firms filed other cases raising similar allegations against the same defendants (this case and *Burmin*, respectively). Concerningly, since Robbins Geller filed those two cases, progress on *all* of the related cash sweep cases has slowed: this case and *Safron* have been delayed pending resolution of this motion, and *McKinney* and *Burmin* have been delayed pending briefing and resolution of a motion to intervene in *McKinney* and transfer it to the District of New Jersey, where *Burmin* was filed months earlier. To the extent Robbins Geller's initial attempt to consolidate *McKinney* with this case can be seen as a gesture toward efficiency, that, too, fell flat when, after the Court chose not to consolidate *McKinney* with *Sherlip* and *Safron* in the first instance, Robbins Geller declined the Court's explicit invitation to brief the issue. *See* December 9, 2024, Order at 1. As happened when it tried to consolidate all of the cash sweep cases into an MDL, Robbins Geller has failed to deliver on the efficiencies it has promised over the course of litigating *Safron* and *McKinney*. Instead, as the Sherlip-Barrett Group argued in the motion to consolidate, Robbins Geller appears to be trying to jump on bandwagons that are already under way by filing "duplicative cash sweep litigations . . . where other, earlier-filed cash sweep cases are already pending and much further advanced." November 27, 2024, Letter at 5.

## CONCLUSION

For the foregoing reasons, the Sherlip-Barrett Group's motion for appointment as interim class counsel is GRANTED.  Robbins Geller's motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the open motions at Dkts. 67 and 68.

The deadline for Plaintiffs to file a Second Amended Complaint incorporating the allegations of Plaintiff Safron Capital Corp. is **Friday, August 15, 2025**.  The deadline for Defendants to answer or otherwise respond to the Second Amended Complaint is **Friday, September 12, 2025**.  If Defendants move to dismiss the Second Amended Complaint, the Court, consistent with its August 16, 2024, Order, Dkt. 28, will not schedule an Initial Pretrial Conference or enter a Case Management Plan until such motion is resolved.

**SO ORDERED.**

**Date:  July 25, 2025**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**